McCORMICK *v.* JARRETT.

*(District Court, E. D. Missouri, E. D.   January 15, 1889.)*

1. TOWAGE—NEGLIGENCE—UNSEAWORTHY TOW.
   The respondent agreed to tow an unseaworthy barge loaded with ice from
   Quincy, Ill., to St. Louis, Mo., for $200, on condition that the owner would
   assume all risks incident to unseaworthiness. The barge having sprung a
   leak on the voyage, owing to unseaworthiness, and being about to sink, *held*
   (1) that in such emergency respondent was bound to take such steps to pro-
   tect the owner of the barge from loss as ordinary and reasonable prudence
   would suggest; (2) that for violation of such duty respondent was liable for
   whatever loss was sustained over and above what would have been sustained
   if such reasonable and proper efforts had been made, and that it was libel-
   ant's duty to show such difference in the amount of the loss.

2. SAME.
   Under the contract aforesaid, although respondent was not negligent, he
   cannot recover the full contract price for towage, but only the reasonable
   value of towage to the place where the sinking occurred.

*(Syllabus by the Court.)*

In Admiralty. Libel for damages.

This was a libel *in personam*, filed to recover the value of a barge and
cargo of ice, which was sunk in the Mississippi river, near Clarksville,
Mo., while on a voyage from Quincy, Ill., to St. Louis, Mo. Libelant
charged that the barge in question was carelessly run against an obstruc-
tion while being landed at Clarksville, Mo., and in consequence thereof
sprung a leak and sunk. Also that after the barge was partially sunk
in shoal water at Clarksville, it was hauled out into the stream, and
landed below the town, where the water was deep, and there abandoned,
and in consequence therof became a total loss.

*R. H. Kern,* for libelant.

*Mills & Flitcraft,* for respondent.

THAYER, J.   In this case I announce the following conclusions of law
and fact, namely:   The barge East, at the time it was taken in tow by
the steamer Jarrett, to be towed from Quincy, Ill., to St. Louis, Mo.,
was not in a fit and proper condition to stand the voyage with a load of
420 tons of ice stored wholly on deck.   In other words, the barge, so
laden, was unseaworthy.   One end of the barge was unquestionably in
a bad condition.   The stem-post was either weather-checked or rotten,
and the planking about the stem had burst its fastenings.   An attempt
had been made at Quincy to repair the defect by nailing pine plank to
the stem-post, so as to strengthen the bow, but the work had been im-
perfectly done.   When the barge reached Clarksville, Mo., and was tied
up temporarily, the injured stem pointed up stream, and most likely

rested on the bottom. Lying in that condition, the weight of ice on deck either split the injured stem-post, or burst the planking from the stem-post below the water line. The evidence in the case convinces me that the barge was properly landed at Clarksville, and was made fast to the shore by sufficient lines. The sinking of the barge at that point was not due, in my judgment, to the careless manner in which the barge was landed or made fast, but was due to the inherent weakness of the barge, as above explained, and its inability to withstand the ordinary incidents of a voyage with a load of 420 tons of ice stored on deck. I further conclude that the respondent at first refused to tow the barge on account of its unseaworthy condition, but eventually agreed to transport it to St. Louis for $200, on condition that libelant would assume all risks incident to unseaworthiness. Under that agreement the voyage was undertaken. The result is that respondent incurred no liability on account of what happened to the barge up to the time that he attempted to tow the barge away from the landing at Clarksville, Mo., after it became water-logged.

It may be conceded that, although the libelant had agreed to assume all risks incident to unseaworthiness, yet that it was respondent's duty, after the barge had sprung a leak, to make all reasonable and proper efforts to save the barge and cargo, or as much thereof as possible. Any violation of such duty would render the respondent liable, not for the entire value of the barge and cargo, necessarily, but for whatever loss was sustained by the libelant over and above what would have been sustained if reasonable and proper steps had been taken to save the barge and cargo. After a careful consideration of all the evidence, my conclusion is that the testimony in the case does not show with any degree of certainty that the libelant sustained any greater loss by reason of the fact that the barge was towed from the landing at Clarksville, after it was partially sunk, and was tied up some distance below the town, than he would have sustained if the barge had been left at the landing. I consider it most probable that in any event the cargo (consisting, as it did, of ice loaded on deck) would have been, as it was, wholly lost. As the barge careened at the landing, in the act of sinking, it would most likely have precipitated the entire cargo into the river. This, I think, would have been the necessary result before the ice could have been unloaded, if the necessary appliances had been at hand (which they were not) for unloading with economy and dispatch. Even if the cargo had not been lost in the manner last indicated, I think it very doubtful, considering the value of the cargo, and the expense of obtaining the necessary appliances for unloading, and of unloading it, whether a prudent owner, if the barge had been left at the landing at Clarksville, would have made any effort to unload, and thus save, the cargo.

In opposition to these views it may be urged that the barge itself could have been raised more easily, and at less expense, if allowed to sink at the landing, than at the point below the town where it was subsequently moored and sunk. This may be true, but the evidence fails to show how much more it would have cost to raise the barge in the latter place

than in the former. The court is accordingly without the means of assessing the damage, even if it be conceded that it would have been more prudent to have left the barge at the landing. From what has been said, however, I would not have it inferred that the court finds that the respondent was in fact guilty of negligence in towing the barge from the Clarksville landing while in a sinking condition. Such conclusion, in my opinion, is not justified by the evidence. After the barge was partially submerged, and badly listed, the respondent was forced, by the necessities of the case, either to allow the barge to sink where it lay, or to pull it out into the stream, and attempt to land it at some other place, where it would rest on an even keel. The latter course promised some advantages in the way of preventing the cargo from sliding into the river, besides removing what would have been a formidable obstruction at the landing, if the barge had there sunk. It appears to me that the respondent was compelled to choose between the alternatives last named, in consequence of the unseaworthiness of the barge, for which the libelant was responsible; and although I am not able to say that he pursued the wisest course, yet I am equally unable to say that he was culpably negligent. The respondent, under his contract, did not insure the safety of the barge. He was simply under obligation to do what was prudent, and seemed to promise the best results for the owner in case a loss became imminent through unseaworthiness. The evidence, as before stated, does not satisfy me that he was guilty of any culpable neglect in the performance of such duty. The libel will be dismissed in accordance with the foregoing views.

The cross-demands mentioned in the third and ninth articles of respondent's answer must be dismissed for the reasons following: Respondent is not entitled to recover the full contract price for towing the barge from Quincy to St. Louis, as the voyage was broken up at Clarksville. At most he can only recover reasonable compensation for towing the craft to Clarksville, Mo., and there is no evidence of the reasonable value of such service. The sum of $25, claimed for towage from Cottonwood island to Quincy bay, is not recoverable in this action, as there is no legal evidence of a promise on libelant's part to pay that sum, and no evidence of the reasonable value of such service. Both cross-demands are therefore rejected, and a decree will be entered accordingly.