THE BRITISH AND FOREIGN MARINE INS. CO. v. THE GULF, C. & S. F. R'Y CO.

(Case No. 2008.)

1. STATUTE CONSTRUED — INSURANCE.— The Revised Statutes of Texas (art. 278) provide that "railroad companies and other common carriers of goods, wares and merchandise for hire, within the state, on land, or in boats and vessels on the waters entirely within this state, shall not limit or restrict their liability, as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading, or memorandum given on the receipt of the goods for transportation, or in any other manner

whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid." A railway company in Texas executed a bill of lading for cotton, which the company, as a common carrier, undertook to deliver at Havre, France, and afterwards on the same day the cotton was insured by the shipper. It was stipulated in the bill of lading, that, in case the cotton was destroyed, the carrier liable for the loss should have the full benefit of any insurance effected upon or on account of it. The cotton was destroyed by fire *in transitu;* the amount of the policy was paid by the insurance company to the owner, who transferred his claim against the railway company to the insurance company, which sued the railway company. *Held:*

(1) Since the certificate of insurance described the cotton as having been already shipped, the insurance company was chargable with notice of the reservation contained in the bill of lading, to the effect that, if loss occurred while the cotton was in charge of the railroad company, and that loss was satisfied by it, the railroad company should be entitled to the insurance money due on the cotton.

(2) The insurance company had no rights against the railroad company when the bill of lading was signed and the reservation made, and the railroad company had every right which the reservation could confer when the insurance was effected.

(3) If the carrier had desired, it could have insured the goods to the extent of their full value. (Following Van Natta *v.* Insurance Co., 2 Sandf., 490.)

(4) Since the right of the carrier exists to make a direct contract of insurance, the right follows, to stipulate for the insurance effected by the shipper.

(5) The fact that a carrier may have the right to reimburse himself from a third party for losses under the bill of lading will afford no defense to an action against him by the shipper. He must first pay and may then sue on his policy.

(6) The right of the insurance company to enforce repayment against the carrier for the loss, if it existed at all, was the right to be subrogated to the right of the shipper, but that right could not be enforced, for both the shipper and the carrier had contracted in effect that it should not exist.

(7) The railroad company had the right to make the reservation as to the insurance money, in the bill of lading.

(8) The insurance company could not recover from the railroad company the amount paid on the policy.

APPEAL from Galveston.   Tried below before the Hon. Wm. H. Stewart.

On the 16th of November, 1883, the appellant brought suit against the Gulf, Colorado & Santa Fe Railroad Company for the value of cotton received by the latter company, December 5, 1882, from Z. Maurey & Co., and which the railway, as a common carrier, undertook to carry and deliver to Z. Maurey & Co., at Havre, France. The cotton was destroyed by fire, it was charged, through the negligence of the railway company after the transit commenced.

The insurance company, on the 5th day of December, 1882, issued a policy of insurance on the cotton, and after the loss occurred

paid the amount of the policy to F. Dennis, the owner, and took from him a transfer of his claim against the railway company — Z. Maurey & Co. having previously transferred to F. Dennis.

The answer of the railway company set up two defenses:

First. That the loss occurred on a connecting line of the Gulf, Colorado & Santa Fe Railway Company.

Second. That by the terms of the bill of lading the railroad company became entitled to the benefit of the *insurance that had been placed* on said cotton by the British and Foreign Marine Insurance Company, and therefore said insurance company could not recover from the railway company.

This latter defense was the one relied on by the railway company.

Case tried before the court without a jury, and judgment for the railway company.

The errors assigned were as follows:

First. The court erred in holding that the following part of the fourth clause in the bill of lading constituted a defense to plaintiff's cause of action, which subdivision of the clause is as follows: " . . . And the carrier so liable shall have the full benefit of any insurance which may have been effected upon or on account of said goods."

Second. "The court erred in holding that the plaintiff could not recover under the facts because of the clause in the bill of lading to the effect that the common carrier liable for the loss should have the full benefit of any insurance which might have been effected upon or on account of the goods lost."

*Davis & Sayles*, for appellant, cited: Common Law Liability, arts. 278, 283, R. S.; Contracts of Carriers [Lawson], section 242, and authorities cited in the notes; Railroad Co. *v.* Allison, 59 Tex., 193; Railroad Co. *v.* Burke, 55 Tex., 333; Sheldon on Subrogation, sec. 229; Hall *v.* Railroad Co., 13 Wall., 367; Hart *v.* Western R. Corp., 13 Metc., 99.

*Ballinger & Mott*, for appellee, cited: Lawson on Carriers, §§ 124, 236, 240; Myrick *v.* Railroad Co., 107 U. S., 102; Insurance Co. *v.* Railroad Co., 104 U. S., 146; Railroad Co. *v.* Manuf. Co., 16 Wall., 324; Railroad Co. *v.* Farmers' and Millers' Bank, 20 Wis., 122; Irvin *v.* Railroad Co., 59 N. Y., 653; Insurance Co. *v.* Calebs, 20 N. Y., 173; Insurance Co. *v.* Railroad Co., Lawson's Con. of Carriers, p. 383; Carstairs *v.* Ins. Co., 18 Fed. R., 473; S. C., 16 Am. & Eng. R'y Cas., 142; Rintoul *v.* Railroad Co., 16 Am. & Eng. R'y Cas., 144.

WILLIE, CHIEF JUSTICE.— The important question in this case arises out of the provision contained in the bill of lading executed by the appellees to Z. Maurey & Co., to the effect that, in case the property was destroyed, the carrier liable for the loss should have the full benefit of any insurance effected upon or on account of said property.

The question is, whether or not, with that reservation in the bill of lading, the appellant, in whose company the insurance had been effected, can recover from the railroad company the value of the cotton destroyed after having paid the same to the shipper.

It is a conceded fact that the cotton was destroyed by fire, and in such a manner as would not have excused the railroad company at common law.

It appears from the record that whilst the bill of lading and certificate of insurance were both executed on the same day, the former was prior in time, for the certificate of insurance describes the cotton as having been already shipped by the railroad company.

Hence, it must follow that the appellant was affected with notice of the reservation contained in the bill of lading. The insurance company, knowing that the property was in charge of the railroad company as a common carrier at the time, is chargeable with notice of the circumstances of the contract for its transportation, entered into between the carrier and the shipper of the cotton.

This being the case, the insurance company must be held to have contracted with the full understanding that in case of loss of the cotton whilst in charge of the appellee, and that loss was satisfied by the railroad company, the latter would be entitled to the insurance money due upon the cotton, unless the reservation in the bill of lading was such as could not be made and was therefore void and of no effect.

This disposes of the point made that the insurance company, being entitled to the shipper's rights and remedies against the carrier, could not be deprived of them by any contract between the carrier and the shipper to which the insurance company was not a party.

The insurance company had no rights against the appellee when the bill of lading was signed and the reservation was made; but on the contrary the railroad company had all the right which the reservation could give it as against the appellant company at the time the insurance was effected.

If, therefore, the question depended upon the right of two parties to interfere with the contract of a third, by an agreement

between themselves alone, we should be compelled to hold that neither the certificate of insurance, nor the transfer by the owner of the cotton to the insurance company, was of any avail, as against the previous contract between the shipper and the railroad company.

The whole question, therefore, turns upon the right of the appellee to make the reservation as to the insurance money in its bill of lading.

This right is questioned on the ground that the reservation is in effect a limiting of the common law liability of a carrier for the loss of goods transported by him,—a limitation prohibited by the statutes of our state.

It is said that by allowing the carrier to reimburse himself out of the insurance money, we relieve him of all responsibility and permit him to deal with the property in his charge as carelessly and negligently as he pleases, and yet save him from accountability in case of its loss.

It is, perhaps, true that the carrier is enabled by such contract to indemnify himself for any money he may pay out on account of the loss of the goods, but does this relieve him from responsibility, or limit his liability in the least?

To an action of the shipper for the value of the goods he could not successfully plead that he was not liable because of the insurance, and that the shipper must look to the insurance company for compensation.   It would be no defense to the action, and the carrier has not, therefore, limited his liability to the person with whom he has contracted.

The shipper has all the rights and remedies against the carrier he would have possessed had no such reservation been made.  If the goods are lost from other causes than the act of God or the public enemy, the carrier is liable; and it is no concern of the owner that, after the loss is compensated by the carrier, the latter can seek reimbursement at the hands of some one else.

But it is said to be against public policy to allow such reservations in the bill of lading, because it lessens the necessity for care and diligence on the part of a railroad company in reference to the property in its charge for transportation.

This may be so in some measure, but it certainly does not release the company from liability, or place them in the same position as if they had contracted that they should not be liable either in whole or in part for the loss of the goods, unless they would be so liable at common law.

There is a great difference between contracting for a limit of common law liability and contracting to be fully liable as at common law, but to have the privilege of indemnifying against loss by reason of such liability.

Besides, the owner does not bind himself to insure, or to do anything which will result in benefit to the carrier.  "There is, therefore, no contract of exemption against liability for loss by negligence, no agreement that the carrier shall be indemnified, but the contract simply is that, in the contingency of insurance, a consequent benefit will, in case of loss, result to the carrier." Pintard v. N. Y. Cent. & H. R. R. R. Co., 16 Am. & Eng. R'y Cas., 144.

The carrier has the right to insure the goods in his charge by a contract made directly with the insurance company, and this he may do to the extent of their full value.   Fland. on Ins., 380; May on Ins., 80; Lawson on Con. of Carriers, 391, 392; Hutchinson on Con. of Car., § 2129; Van Notta v. Insurance Co., 2 Sandf., 490; Insurance Co. v. Calebs, 20 N. Y., 177.

This is upon the principle " that every person who would be liable in the event of the loss of the property may effect an insurance for his own protection."   Hutch. on Car., § 429.

The carrier needs no protection against losses for which he is not liable under his contract with the shipper; and, if not allowed to insure against those for which he is liable, the policy of insurance is of no use as a protection to himself.

It is clear that if the want of power in a carrier to limit his common law liability deprives him of his right to indemnify himself against loss, he cannot contract for such indemnity directly with an insurance company any more than he could through his agreement with the owner of the property.

If we look to the effect or result of the two contracts we find that the carrier's liability is restricted as much by the one as by the other; and if the one is against public policy the other is also.   If there be any difference it is restricted to a greater degree by the contract made by the carrier with the insurance company.   That positively indemnifies him against loss; the other indemnifies only upon the happening of a contingency.

But the right of the carrier to make a direct contract of insurance is one long recognized, and that even against his own negligence. We think it equally his right to stipulate for the insurance effected by the shipper.   Lawson's Con. of Carriers, p. 383.

When a railroad company, as in the present instance, pursues the latter course, and the owner insures, and a loss covered by the policy

and the bill of lading occurs, the railroad company stands substantially in the same position towards the shipper and the insurance company as if it had insured by direct contract. The railroad company is primarily liable to the owner of the goods for their value if destroyed. The insurance company is also liable to the owner to the extent of the loss covered by the policy in trust for the benefit of the carrier.

The owner has a right of action for the value of his property either against the railroad company or against the insurer.

We have seen that the fact that the carrier has a right to reimburse himself from a third party for losses under the bill of lading forms no defense to an action against him by the shipper. He must pay the value of the property destroyed and then bring suit against the party liable to him under the contract of insurance. This is the case whether the carrier has insured or has received the benefit of the insurance obtained by the owner — especially under our system of jurisprudence, where suits may be prosecuted in the name of the true or equitable owner of the cause of action.

But if the insured proceeds first against the insurer and recovers under the policy, or it is paid by the latter without suit, can he then bring suit upon the bill of lading against the carrier?

A complete answer to such suit, although brought for the benefit of the insurer, would be the reservation contained in the bill of lading to which the plaintiff was a party. To recover the value of the property destroyed and appropriate it to the insurance company would be in direct violation of that stipulation, and the suit brought directly by the insurer is in no better condition.

The right to insert such a stipulation as the present in a bill of lading is universally admitted, or denied, if at all, only on the ground of the supposed effect it has of restricting the common law liability of a carrier. This, as we have shown, in our view, is not the effect of the reservation. If it is a legal stipulation it must have some effect; and if it does not protect the carrier against losses which he must make good under the bill of lading, it is entirely nugatory.

The right of the insurance company to recover against the railroad company, if it existed at all, was the result of an equitable subrogation to the remedy of the owner of the cotton against the carrier, and of the assignment made subsequent to its loss. But the assignment was worthless, as it was made in privity and subordination to the previous stipulation placed in the bill of lading; and the subrogation was of no avail, as no one can become subrogated to a right

which the party, originally possessing that right, had previously contracted should not be enforced.

The question is of the first impression in Texas, and as controlled by a statute similar to our own upon the subject of common carriers, has perhaps never received the adjudication of a court of last resort. See 20 N. Y. Rep. It has, however, in two or three instances been passed upon, and in accordance with our own views, by courts of eminent learning, to whose opinions great deference is due. Carstairs v. Insurance Co., 16 Am. & Eng. R'y Cas., 142; Pintard v. Railroad Co., id., 144; Insurance Co. v. Railroad Co., Lawson on Con. of Carriers, p. 383.

We think that the court did not err in rendering judgment in favor of the defendant below, and that judgment is affirmed.

AFFIRMED.

[Opinion delivered March 10, 1885.]