### THE GULF, COLORADO & SANTA FE RAILWAY COMPANY v. J. ZIMMERMAN & CO.

#### No. 7091.

1. **Negligence, Facts from which Presumed.**—From the fact that the cotton was burned while in transit (shipped by railway) and on the cars of the carrier, the presumption obtains that the fire and consequent loss were caused by the negligence of the railway company.

2. **Contract by Carrier for Benefit of Insurance.**—A carrier can provide in his contract of shipment that he shall have the benefit of any insurance effected upon the goods to be transported, and that if the owner has received from the insurance company the amount of the loss he will be precluded by such stipulation from recovering against the carrier. Such facts, however, the carrier must show to avoid liability.

3. **Same—Construction of Insurance Policy.**—Cotton was shipped November 13, 1886, upon the road of appellant, which inserted in the bill of lading for the cotton the clause, "The carrier shall have the benefit of any insurance that may have been effected on account of said goods." The shippers held a policy upon the cotton, but it stipulated that "it was not to cover the common law liability of the common carrier." It also provided upon proof of loss "while in the care of any common carrier" that the insurance company should advance to the holder of the policy "an amount equivalent to the insured value of the cotton so lost, damaged, or destroyed *pending investigation* and determination as to whether such loss is one for which the carrier should be liable at common law; or if the carrier be liable the insured are to return to the insurance company such amount as is received from the carrier immediately upon its receipt, which payment is to be a discharge in full of said advance." Part of the cotton was destroyed by fire upon the cars of the railway company. Proof of loss was made, and the insurance company made the advance as it was required. Suit against the railway company resulting in recovery, *held*, that the clause in the bill of lading did not operate to defeat the recovery for benefit of the insurance company. Such advancement under the circumstances was not a payment for the loss.

APPEAL from Johnson. Tried below before Hon. J. M. Hall.

The opinion gives the facts.

*J. W. Terry*, for appellant.—1. As the bill of lading contained a clause giving the carrier the benefit of any insurance which might be effected by the shipper, and as such stipulation has been held reasonable and binding, and as the insurance was effected subsequent to the issuance and acceptance of said bill of lading by the shippers, said stipulation in the bill of lading defeated the common law right or con-

tract right of the insurance company to be subrogated to the claim of the shippers against the carrier; and as it appears from the evidence that the insurance company has paid to the shippers the amount of the loss, and this suit is not being prosecuted for the benefit of the appellees but for the benefit of the insurance company, and the insurance company not being entitled under the terms of the bill of lading to subrogation, the appellees were not entitled to judgment.

2. The right of subrogation is one that arises from implication in the absence of express contract. Whenever there is an express stipulation regulating the rights of parties the law will never set it aside or supply its place by implication. While in the absence of any express stipulation the insurance company on payment of the loss is subrogated to the right of the owner against the carrier, yet it was competent for the owner and the carrier in the acceptance of the shipment to provide by contract in case of any loss for which the carrier might be liable that no third party, insurance company or otherwise, should be subrogated to the right of the owner against the carrier, and the clause in question in the bill of lading is in effect a contract that in case of loss the insurance company should not be subrogated to the right of the owner against the carrier. Ins. Co. v. Easton, 73 Texas, 167; Ins. Co. v. Railway, 63 Texas, 476; Carstairs v. Ins. Co., 16 Am. and Eng. Ry. Cases, 142; Jackson Co. v. Ins. Co., 139 Mass., 511; Ins. Co. v. Calebs, 20 N. Y., 73; Ins. Co. v. Trans. Co., 117 U. S., 312.

*Crane & Ramsey*, for appellees.—1. The insurance company in its policy or contract of insurance having stipulated that it would not be responsible for any loss for which a common carrier would be liable at common law, the appellant can not claim any benefit from the insurance policy unless the record shows that the cotton in question was destroyed by the act of God or a public enemy.

2. The mere fact that the insurance company has advanced to appellant the value of the cotton destroyed pending the investigation of the question of appellant's common law liability as a common carrier, will not preclude appellees from recovering the value of the cotton destroyed by appellant. The money so advanced, to be returned in the event of plaintiff's recovery, is in no sense a payment by said insurance company of the loss incurred, but is simply a loan made on the terms and conditions prescribed in the policy. Walruth v. Ingles, 64 Barb.; 12 Am. Law Reg., p. 600; Goss v. Ins. Co., 11 La. Ann., 47.

TARLTON, JUDGE, *Section B*.—On November 13, 1886, appellees J. Zimmerman & Co. shipped over appellant's railway from Cleburne, Texas, 100 bales of cotton consigned to Miller & Fenton, Liver-. pool, England. On November 15, 1886, fifty bales of the cotton were burned at Temple, Bell County, Texas, while on the cars of appel-

lant. On November 8, 1887, appellees, in the District Court of Johnson County, sued appellant on its contract of shipment and its liability as a common carrier for the value of the cotton lost, and afterward recovered judgment, from which this appeal is prosecuted.

At the time of shipment appellant delivered to appellees a bill of lading providing that "the carrier shall have the full benefit of any insurance that may have been effected upon or on account of said goods." The appellees had, on August 9, 1886, obtained from the Marine Insurance Company, Limited, of London, an open policy No. 224 signed by Chubb & Son, agents, covering foreign shipments of cotton made by appellees subject to the usages and customs at Lloyds. This policy stipulated that "it was not to cover the common law liability of the common carrier." It further provided, that "the assured have authority to issue certificates for any risks covered under this policy, they agreeing to issue the same according to Chubb & Son's instructions, and to mail two press copies to Chubb & Son as soon as issued." The policy contained the further stipulation as follows: "It is understood and agreed between Zimmerman & Co. and the Marine Insurance Company of London, that when the said Zimmerman & Co. shall present to the said Marine Insurance Company proof that any cotton insured under their policy No. 224 has been lost, damaged, or destroyed while in the care of any common carrier, the said insurance company shall *advance* to the said Zimmerman & Co., or to the holder of the certificate issued to them, covering the loss, an amount equivalent to the insured value of the cotton so lost, damaged, or destroyed, *pending investigation and determination as to whether such loss is one for which the carrier should be liable at common law;* or, if the carrier be liable, the said Zimmerman & Co. are to return to the said Marine Insurance Company such amount as is received from the common carrier immediately upon its receipt, which payment is to be a discharge in full of said advance." On November 13, 1886, the insurance company issued to appellees a certificate of insurance as follows: "This is to certify that on the 13th day of November, 1886, this company issued, under policy No. 224, for Zimmerman & Co., $4800 in gold, on 100 bales of cotton, valued at £1000, shipped on board the Gulf, Colorado & Santa Fe Railway at and from Cleburne, Texas, to Galveston, Texas, thence via steamship Highfield or other vessel to Liverpool, England; and it is hereby understood and agreed that in the case of loss such loss is payable to the order of Zimmerman & Co. on surrender of this certificate. This certificate represents and takes the place of the policy, and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claims) as fully as if the property was covered by a special policy direct to the holder of this certificate, and free from any liability for unpaid premiums." This certificate further provided, that any *loss or claim*

*thereunder should be adjusted subject to the conditions of the policy and contract of insurance.*

At the time of the shipment appellees drew, with certificate of insurance attached, on Miller & Fenton, consignees, for full value of the cotton shipped. The consignees having paid the draft without any knowledge of the loss of the cotton, the insurance company advanced for appellees to Miller & Fenton the value of the cotton destroyed. This advance was made pending an investigation to determine whether appellant was liable as a common carrier and in accordance with the stipulation of the policy heretofore set out. If the railway company should be held liable as a common carrier, the insurance company was to be repaid by appellees. Meanwhile, appellees were charged by the insurance company with the sum advanced.

From the fact that the cotton was burned while in transit and on the cars of appellant, the presumption (which is not rebutted) obtains that the fire and the consequent loss were caused by the negligence of appellant. "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." Rintoul v. Railway, 16 Am. and Eng. Ry. Cases, 146. The liability hence attaching, appellant seeks to avoid on the following grounds: 1. The contract of shipment provided that it should have the benefit of any insurance effected by appellees on account of the cotton. 2. The appellees had procured insurance against the loss sustained. 3. The appellees had received from the insurance company payment for such loss.

It is not to be doubted that a carrier can provide in his contract of shipment that he shall have the benefit of any insurance effected upon the goods to be transported, and that if the owner has received from the insurance company the amount of the loss he will be precluded by such stipulation from recovering against the carrier. Ins. Co. v. Railway, 63 Texas, 479; Rintoul v. Railway, supra, and authorities cited. It is not the less to be doubted, however, that after proof of the loss due to the negligence of the carrier, it is incumbent on him to establish the existence of the conditions which shield him from liability. It becomes, therefore, pertinent to consider whether appellant proved that appellees had procured insurance against the loss sustained, and that appellees had received from the insurance company payment for such loss. The conclusions of the trial court were adverse to appellant on each of these issues, and these findings, among others, are assigned as errors.

What was the character of the loss sustained? It was caused by the negligence of the carrier, and would therefore constitute a liability of the common carrier at common law. Ins. Co. v. Railway, 63 Texas,

479.  In this case the contract of insurance made by appellees with the insurance company was limited in its character.  It did not cover losses caused by the carrier's negligence, because the policy executed August 9, 1886, stipulated that the insurance company would not be liable for any loss for which a common carrier would be liable at common law. The certificate of insurance dated November 13, 1886, did not abrogate the terms of the policy.  It was issued with reference to the provisions of the policy, and all losses arising thereunder were to be adjusted according to the stipulations and conditions of the policy.  A contract of insurance so limited the parties could certainly make; and it would seem that the limitation would be reasonable, and in the exercise of prudence that the insurer should not, without consideration passing to him or to the owner, be held to indemnify against the negligence of the carrier.  Rintoul v. Railway, supra.

Nor do we agree with the appellant that appellees had been paid by the insurer for the loss sustained.  The stipulations in the policy show that the liability of the insurer to the owner depended upon the question whether the loss was one for which appellant would be liable as a common carrier at common law.  The evidence shows that the payment made by the insurer was not in payment of a debt recognized to be due in accordance with the terms of the policy, but as an advance pending the determination of the question of liability, made to the owners as stipulated in the policy.  We do not think it necessary to examine in detail the assignments of error, which are numerous, and which question the correctness of the conclusions of the trial court embodied substantially in the views here expressed.

We are of opinion that the judgment should be affirmed.

*Affirmed.*

Adopted October 13, 1891.

*J. W. Terry* argued a motion for rehearing.  The motion was refused.