## MARYLAND MOTOR CAR INS. CO. v. HAGGARD. (No. 1331.)

(Court of Civil Appeals of Texas. Texarkana. May 7, 1914.)

1. INSURANCE (§ 603\*) — SUBROGATION — RELEASE OF CLAIM BY INSURED—EFFECT.

Where one procuring insurance on his automobile against damage by collision settled with the wrongdoer for the damage to the machine in a collision and executed a release purporting to effect a complete settlement, he could not recover on the policy stipulating that insurer, on payment of the loss, should be subrogated to all right of recovery by insured for

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the loss, and that the right should be assigned to insurer by insured on receiving payment.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1499; Dec. Dig. § 603.*]

2. INSURANCE (§ 606*) — SUBROGATION — WAIVER.

Where insured against damage to his automobile in a collision offered to assign his claim against the wrongdoer to an attorney for insurer, who refused to take it at the time for want of authority to act, and because reasonable time had not elapsed to make investigations, and immediately afterwards insured filed a claim with the wrongdoer and settled, insurer did not waive his right to subrogation stipulated for in the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*]

Error to Tarrant County Court; Chas. T. Prewett, Judge.

Action by F. A. Haggard against the Maryland Motor Car Insurance Company. There was a judgment for plaintiff, and defendant brings error. Reversed and rendered for defendant.

The plaintiff in error issued a policy of insurance to defendant in error on May 7, 1913, in the sum of $600, insuring a certain automobile against loss by fire or damage by collision with any other automobile or vehicle. On January 1, 1913, while the insurance was in force, a fire engine of the fire department of the city of Ft. Worth collided with defendant in error's automobile, causing damage to it. Defendant in error brought this suit on the policy to recover $400 as the amount of the damage sustained. The policy contained the following clause:

"6. If this company shall claim that the damage was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving payment."

The plaintiff in error pleaded, as a defense, that defendant in error, in total disregard of the above-mentioned clause of the policy, did, in February, 1913, preclude the plaintiff in error from its right of subrogation by executing a full and complete release to the city of Ft. Worth of all damages occasioned by the injury to his automobile, in consideration of the payment of $100. The defendant in error made replication to the alleged defense, admitting that he made claim to the city for items of damage consisting of loss of time in his business occasioned him by being deprived of the immediate use of his automobile, and accepted $100 in payment of same, but alleged that it was not a settlement of the damages to the automobile, and was so understood not to be a settlement of that item of damage as claimed against the insurance company, and that the cause of action on the policy was specially reserved, and that the recitals in the written release of relinquishment of all claims

for damages was a mistake. Defendant in error further replied that plaintiff in error waived the right to subrogation.

It was proven that the defendant in error paid out $264.90 to repair the damage to his automobile. In February, 1913, defendant in error executed a written release to the city of Ft. Worth, reciting that in consideration of the payment of $100 by the city he relinquished and released the city from "all claims of every character that I have or may have by reason of injuries and damages sustained by me on the 1st day of January, 1913, caused by the fire department truck colliding with one Flanders automobile owned by myself, said collision occurring at Fourth and Throckmorton streets in the city of Ft. Worth on January 1, 1913," and "this release is intended to cover all damages and injuries occasioned or that may arise therefrom directly or indirectly." In respect to the release defendant in error testified, in substance, that in February, 1913, he filed a claim with the city for items of damages consisting of loss of time in his business, due to the deprivation of use of his automobile occasioned by the tort of the city, and that the city paid him $100 on the claim, and he accepted it. At the time of filing the claim and accepting the money defendant in error did not know, he says, that the policy contained the clause in question, but that he told the city claim agent that he had the policy of insurance and was expecting the insurance company to pay the repair bill and that he did not read the release before signing it. He did not testify that in the settlement he reserved any right to claim damages to the automobile. Mr. Wren, claim adjuster for the city, testified in behalf of defendant in error, in substance, that defendant in error filed a written claim for damages against the city, and that after taking the matter up with the legal department of the city the legal department decided that the city was not legally liable for damages, and therefore the $100 was offered and paid as a settlement and accepted by defendant in error. The adjuster testified that he and defendant in error talked about the insurance at the time, and about whether the settlement would have any effect in a suit, and that he told defendant in error that the insurance company might want to take out the $100 when they paid him. In making the settlement the adjuster said he considered "the city out of it, the whole transaction, at the time we paid Dr. Haggard the $100 and took his release," and that "the city was out of it now and all the time." Neither the adjuster nor the appellee testified that in making the settlement there was reserved any right to make further claim for any item of damage, but the testimony shows an intention to end the matter by the settlement at the time.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Chapmen, Beckham & Cooper and Theodore Mack, all of Ft. Worth, for plaintiff in error. Dedmon & Potter, of Ft. Worth, for defendant in error.

LEVY, J. (after stating the facts as above). [1] Claiming that the evidence established a breach ·by defendant in error, as pleaded, of the stipulation in the policy relating to subrogation, the plaintiff in error requested that a peremptory instruction in its favor be given the jury. The court refused the request, and error, by proper assignments, is predicated thereon. It is quite a well-settled rule that if an insured settles with or releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company, the insurance company's right of subrogation against the wrongdoer is thereby destroyed. Bloomingdale v. Ins. Co. (Sup.) 84 N. Y. Supp. 572; Ins. Co. v. Trust Co., 123 Pa. 523, 16 Atl. 79, 2 L. R. A. 586, 10 Am. St. Rep. 546; Sims v. Ins. Co., 101 Wis. 586, 77 N. W. 908; Ins. Co. v. Ry. Co., 63 Tex. 475, 51 Am. Rep. 661; Ins. Co. v. Easton, 73 Tex. 167, 11 S. W. 180, 3 L. R. A. 424. And if the settlement made by defendant in error with the city of Ft. Worth had the legal effect to destroy the plaintiff in error's remedy of subrogation under the policy, then defendant in error thereby discharged the plaintiff in error from its obligation to pay him to the full extent to which he has defeated the plaintiff in error's remedy of subrogation. Packham v. Ins. Co., 91 Md. 515, 46 Atl. 1066, 50 L. R. A. 828, 80 Am. St. Rep. 461. It appears admittedly that defendant in error filed a claim for specific items of damage occasioned by the tort of the city on January 1, 1913, and that the city denied legal liability for any damages by reason of the injury to the automobile, and that thereupon the city and defendant in error settled the controversy for $100 paid and received. In the settlement it does not appear from the evidence that any claim in favor of the insurance company was reserved or excluded, or that the settlement was not intended to operate as a full release to the city of all damages. In point of fact, the settlement as made does not appear to have been only a partial settlement; nor does it appear that the written release speaks a mistake of the intention of the parties to effectuate a complete settlement. The legal effect of the settlement is, we think, to give a full and complete release to the city of Ft. Worth. The tort by the city was single, causing sundry items of loss, and gave rise to one liability, and the whole cause of action was therefore merged in the one settlement.

[2] Defendant in error in his· replication asserted waiver by plaintiff in error of the right to subrogation. There is no evidence to show that plaintiff in error agreed to waive the assignment, nor any sufficient evidence on which to base estoppel. Very shortly after the injury, it appears, defendant in error offered to make the assignment to an• attorney, for plaintiff in error, who refused to take it at the time for want of full authority to act for plaintiff in error, and because reasonable time had not elapsed to make investigation of the injury. Immediately afterwards defendant in error filed the claim with the city and settled. Defendant in error by his contract bound himself to make the assignment of his cause of action upon payment by plaintiff in error of the loss. The time when the payment is to be made is not specified. A reasonable time, though, by law would be given the plaintiff in error to make the payment of loss and call upon defendant in error to make the assignment of his cause of action against the city. And it would become the duty of defendant in error, in order to perform his part of the agreement, to continue in a position to make it legally possible for him to make a legally effective assignment when called ·upon to do so within a reasonable time by plaintiff in error. Plaintiff in error, therefore, had the right to use a reasonable time from the date of the injury to investigate the accident and loss, and make payment and call for the assignment to it. And refusal of the attorney to take the assignment at the time merely for the reasons given would not operate to estop plaintiff in error. Failing, as defendant in error did, to comply with his contract in the respect in question, and there being no waiver or estoppel on plaintiff in error's part, the court should, as a matter of law, have directed a verdict for plaintiff in error.

The judgment is reversed and here rendered in favor of plaintiff in error, with costs of the trial court and of this appeal.