HOME INDEMNITY COMPANY, Appellant,

v.

Roger H. MARTIN et ux., Appellees.

No. 4043.

Court of Civil Appeals of Texas.

Eastland.

Feb. 18, 1966.

Rehearing Denied March 11, 1966.

Johnson, Guthrie, White & Stanfield, Dallas, Crenshaw, Dupree & Milam, Brown & Shuman, Moore & Armstrong, Lubbock, for appellant.

A. W. Salyars, Lubbock, for appellees.

WALTER, Justice.

Roger H. Martin and wife filed suit against The Home Indemnity Company on a fire policy covering their home. Home asked for a recovery over against a third party defendant, L. K. Lankford, if Martin recovered against it. The proceedings of a pre-trial are reported in the first fourteen pages of the statement of facts. It contains some stipulations that the court will decide certain issues and that certain issues will be submitted to a jury. We do not find any reference to the pre-trial in the briefs. Commercial Insurance Company paid the Martins $2,782.50 under its policy and intervened and adopted Home's allegations in its third party action. Commercial has not appealed. At the conclusion of the evidence, the court withdrew the case from the jury and rendered judgment that the Martins recover $8,571.27 against Home and that Home and Commercial recover nothing.

Home has appealed. Home says that it is not liable for the loss because, after the loss occurred, the Martins impaired its sub-

rogation rights against the third party defendant. The insurance company's defense is predicated on the following provision of the policy:

"Except as respects Coverages E and F under Section 11, the Company may require from the Insured an assignment of all rights of recovery against any party for loss to the extent that payment therefor is made by the Company and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after a loss to prejudice such rights; but as respects coverage under Section 1 he may, prior to a loss and in writing only, waive his right of recovery from any party."

Home contends that Martins' course of conduct with Lankford after the fire prejudiced its rights of subrogation in that Martin either made a settlement of his claim against Lankford or admitted that Lankford was not responsible for the fire.

Roger H. Martin testified substantially as follows: We had a fire at our home on May 7th, 1964. I notified Home's agent of the fire that night. The insurance company's adjuster Ed Lamb came to our home the next morning. Home has not paid anything on their policy. Mr. Lamb furnished us with a proof of loss form. I got all the information and gave it to him and he prepared the proof of loss which my wife and I signed on May 20, 1964. On May 18, 1964, my wife and I and L. K. Lankford executed an instrument in which Lankford agreed to repair the fire damage to our home and we assigned $5,893.52 of our policy to him. Home refused to approve the assignment. I rescinded this agreement after Home refused to recognize it. When Lamb came out the morning after the fire, he introduced himself as an adjuster for Home. Lankford didn't make a move until Lamb gave him instructions. After his discussion with Lamb, Lankford went to work cleaning out and getting ready to make the repairs.

Ed Lamb testified substantially as follows: I investigated the fire loss to Mr. Martin's house the morning after the fire. I was introduced to Mr. and Mrs. Martin by their insurance agent. I told them I was an adjuster. I told them the claim would be forwarded to Dallas for payment. When I went out to Martin's place I did not tell him and Mr. Lankford that I did not have authority to adjust the loss. I told them that I was representing Home Indemnity Company. We take the proof of loss and the loan receipt with the closing report and it goes in to the office and we are through with it. I had arranged this with Mr. Martin and told him the draft would be issued by Home. Several days thereafter I received his estimate and it was satisfactory with me. I agreed with the Martins on the damage at the time I sent the papers to Dallas. I told them that the only authority I lacked was to write the check. I knew that Lankford had made the estimates and I okayed them as to the amount of damage. We are taught that our job is to assist the insured in ascertaining his loss and damage and in preparing forms for him to establish his loss and damage and present his claim for payment. The agreement between me and the Martins was that the amount of their claim against Home was valid and legitimate. I agreed with the Martins on the amount of their claim and sent it in for payment.

Gereal Broiles testified substantially as follows: Bill Holliman is a specialist in the field of working on cabinet tops and doing tile work. I worked for Bill at Martin's house. Bill was on the job with me and we took every precaution that we ever take while doing the job. Part of the tools we worked with belonged to me and part of them belonged to Holliman.

A. C. Black testified substantially as follows: I am City Fire Marshall here in Lubbock. The fire at Martin's occurred at 6:12 p. m. on May 7, 1964. From my investigation I concluded that a spark was caused by the metal section of the brush striking a switch. That started the fire.

L. K. Lankford testified substantially as follows: I am the third party defendant who is being sued by Home. I was the general contractor making certain repairs on Martin's home before the fire. Joe Knight was an independent contractor under me. His employees were his and not mine. Joe Knight was not carried on my books as an employee. None of his employees were carried on my books as my employees. I had no right to control the details of their work. I saw Ed Lamb the morning after the fire. Mr. and Mr. Martin, Marvin Berry, Joe Knight and an agent from McFarland-Maisen Insurance Company were also present at the time I talked to Lamb. Lamb said he was an adjuster and was out there to find out the extent of the damage and try to make a settlement with the Martins on their loss. He was asked the following question and he gave the following answer:

"Q– All right. Mr. Lankford, did you go to work there because of what Mr. Lamb told you?

A– Strictly because of what Ed Lamb told us. He was—as far as I was concerned he was Home Indemnity Company."

About eleven days later we tried to get something in writing and Home refused to sign. I stopped work for a short time. I had no dealings with Bill Holliman at all at any time. Bill Holliman worked on the Martin place as an independent contractor. Neither Holliman nor his employees or Joe Knight were my employees. They were not carried on my books as such. I had nothing to do with their compensation, their social security or withholding taxes.

■ Appellant contends that the court erred in refusing to direct a verdict in its favor because the Martins made a settlement with Lankford. This point can not be sustained. In support of these points, Home cites the case of Maryland Motor Car Insurance Company v. Haggard, Tex.Civ.App., 168 S.W. 1011, (no writ history).

Haggard had a fire and collision policy with Maryland when his car was struck by a Fort Worth fire truck. Haggard executed a full and complete release to the city for $100.00 and thereafter sued Maryland on his policy for $400.00. Maryland pleaded that Haggard had prejudiced its subrogation rights by executing the release and accepting the $100.00. In holding that Haggard had destroyed the company's rights of subrogation by executing the release and that this was a bar to his recovery on the policy, the court said:

"It is quite a well-settled rule that if an insured settles with or releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company, the insurance company's right of subrogation against the wrongdoer is thereby destroyed."

We fail to see how the law announced by this decision has any bearing on the facts of this case. The record conclusively shows that the Martins did not execute a release or make a settlement with Lankford.

The court properly overruled Home's exceptions to Lankford's trial amendment.

"No abuse of discretion of the trial court or injury to appellant resulting from overruling the special exception has been shown. 'Moreover, a large measure of discretion is lodged in the trial court in passing on the exceptions to the pleadings, as well as to the time that he hears the same, and, in the absence of a showing of abuse of discretion of injury resulting from the ruling of the trial court, the ruling will not be disturbed.' Southern Underwriters v. Hodges, Tex.Civ.App., 141 S.W.2d 707, 711, (Writ Ref.)." Yeatman v. Nelms, Tex.Civ.App., 345 S.W. 2d 351, (no writ history)

Home's points ten and eleven asserting that the court erred in overruling its special exceptions are said to be germane to as-

signment eight in its motion for new trial. It reads as follows:

"The Court erred in overruling The Home Indemnity Company's special exceptions 1 and 11 contained in its answer to the trial amendment of L. K. Lankford the reasons stated in such special exceptions."

In Wagner v. Foster, 341 S.W.2d 887, the Supreme Court in a per curiam opinion said:

"Assignments of error in a motion for new trial which do no more than adopt from or refer in general terms to other motions, etc. do not 'specify', or 'distinctly set forth', or 'clearly identify' a ground of error."

In its third party action against Lankford, Home alleged that the loss resulted from his negligence in that he failed to keep a proper lookout for fire, that he permitted a spark to ignite cement that he was applying to the formica top on a cabinet, that he permitted the fire to spread and had made no provision to prevent the spread of the fire.

■ The record conclusively shows that Holliman was not an employee of Lankford. Anchor Casualty Company v. Hartsfield, (Supreme Court), 390 S.W.2d 469. The record also conclusively shows that there was no evidence of negligence or proximate cause.

■ Home offered in evidence an assignment from Martin to Lankford. Lankford had agreed to repair the fire damage for $5,893.52. Martin assigned this amount to Lankford. Home refused to honor the instrument because it destroyed their rights of subrogation. After Home refused to accept the assignment, it had no further force or authority. Home has had its day in court on its rights of subrogation against Lankford and has failed to introduce any evidence of probative force that he was responsible for the fire. Substantially the same evidence was received from other witnesses. Refusing to admit this cumulative evidence was not reversible error. Rule 434, Texas Rules of Civil Procedure.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.