INSURANCE CO. OF NORTH AMERICA V. NELSON S. EASTON ET AL.

No. 2689.

1.   **Bill of Lading—Common Carrier—Public Policy.**—A clause in a bill of lading to the effect that the carrier shall have the full benefit of any insurance that may have been effected upon or on account of the article to be transported is not invalid by reason of its being in contravention of any rule based on public policy.

2.   **Cases Cited and Reviewed.**—Insurance Company v. Railway, 63 Texas, 475; Insurance Company v. Transportation Company, 117 U. S., 312; Jackson v. Boylston Mutual Insurance Company, 139 Mass., 505, cited and reviewed.

3.   **Insurance.**—The carrier's liability for loss of a commodity received for transportation is the ultimate liability; for the loss of the property while in his custody as carrier results in fact or in legal contemplation from his failure of duty, while that of the insurer is that of an indemnitor in all cases in which the insurance contract does not stipulate to the contrary, or in which a contrary intention may not be fairly inferred from the time and circumstances of the contract.

4.   **Same.**—If the insured wishes a policy that will place the ultimate liability on the insurer and not on the carrier, he must so make his contract as to protect the carrier afterwards to be selected by him, compensate the insurer for the increased risk of ultimate loss, and thus be in position to contract with the carrier for reduction in freight rates rendered proper by reason of the shifting of the ultimate risk from the carrier to the insurer.

5.   **Public Policy—Insurance.**—An open policy of insurance which stipulates that "this insurance shall not enure to the benefit of any carrier," is not void as being in restraint of trade, and when violated by a contract between the insured and a carrier by which the latter should be subrogated to the rights of the insured in case of loss, avoids the policy, and neither the insured nor the carrier can assert rights under it in case of loss, and this whether the carrier had notice of the stipulation in the policy or not.

6.   **Common Carrier.**—A common carrier can not require the shipper to stipulate that the carrier shall have the benefit of insurance effected in case of loss as the condition on which the freight will be received and transported. If such a stipulation is contained in the bill of lading, and afterwards a certificate of insurance is issued to the shipper on an open policy which provides as follows, "Warranted that this insurance shall not enure to the benefit of any carrier," and the certificate is transferred to the carrier after the loss occurs, it confers no right as against the insurance company, and this though both the carrier and the insured were in fact ignorant of the clause contained in the open policy.

APPEAL from Galveston.   Tried below before Hon. W. H. Stewart. The opinion states the case.

*Martin P. Henry,* for appellant. — A marine and fire insurance is purely a contract of indemnity. It is distinguished in this respect from the contract of life insurance, which (and it has been regretted) under the ruling of the courts in the United States and in England is a contract absolutely to pay a certain sum on the termination of the insured life, so that a creditor who insures the life of his debtor may receive both the amount of his policy from the insurance company and collect his debt from the estate of his debtor.   2 Add. on Con., 198.

Fire insurance is on the other hand a contract by the insurer to indem-

nify the insured, so that on the occasion of a loss whereby liability is incurred by a carrier or bailee the insurer paying the loss acquires all the rights of the insured against other parties by subrogation, unless deprived of it by such terms as have been decided to be binding on insurers in bills of lading of carriers. Otherwise his liability is only a secondary one to that of the carrier, like that of suretyship—it is to indemnify the owner. "As to the essential part of this contract it does not differ from a bond of indemnity or a guaranty of a debt." 1 Phillips on Ins., sec. 4; Mars. on Ins., 1; Hall & Long v. The Railroad, 13 Wall., 367.

When therefore a loss occurs by which liability accrues on the part of a carrier to the owner of insured goods, such owner has two sources of redress: one against the carrier, who is primarily liable, arising out of and from his contract or duty; and another, and a secondary one, against the insurer, whose contract to indemnify becomes in force notwithstanding the liability of the carrier. But he is not entitled like the creditor who has insured his debtor's life to both sources of payment. While a payment by the insurer is not a satisfaction of the claim against the carrier, a satisfaction of the loss by the carrier extinguishes all claim against the insurer. Darrell v. Tibbitts, 5 Q. B. Div., 150, Castellane v. Preston, 11 Q. B. Div., 380.

A payment by the carrier of itself was a satisfaction of and extinguished all claim under the defendant's policy, unless the agreement in the bill of lading was effective to make it an insurance of the carrier's liability. But the warranty in this policy restored the underwriter to the same position as that of insurers on all other risks (which the railroads had changed by the terms of their bills of lading, making the carrier's the primary and the insurer's the secondary liability) and restricted the right of the assured to create any interest under the policy in favor of a carrier by bill of lading or otherwise. An examination of the grounds on which this clause of the bill of lading has been held effective to destroy the insurer's right of subrogation in The Phœnix Ins. Co. v. The Erie & W. Tr. Co., 117 U. S., 312; The Jackson Co. v. The Boylston Co., 139 Mass., 505; Mercantile Ins. Co. v. Calcos, 20 N. Y., 174; British F. & M. Ins. Co. v. Railway Co., 63 Texas, 475, shows that no authority can be derived from these decisions to sustain the ruling of the court below.

There is no inconsistency in a provision that the policy should not enure to the benefit of a carrier with a previous covenant to pay the amount of the loss to the assured. Hall v. Railroad, 13 Wall., 367.

The opinion of the Supreme Court of Massachusetts in Jackson Co. v. Boylston Co. recognizes and approves the ruling in Carstairs v. The Insurance Company: "While the contract in terms made with the insurer could not be modified by him, this presents no reason why he may not modify a right of subrogation which depends only on his own relations to the carrier by changing those relations." Per Devens, J., p. 512.

It distinguishes the case where an insurance policy does forbid the insurance clause of the bill of lading from becoming effective from one in which the policy is silent. This position has been confirmed in two recent cases in the Supreme Court of Pennsylvania decided at the same time and arising out of the same loss, and not yet reported in the State Reports. The Niagara Fire Ins. Co. v. The Fidelity, 23 W. N. C., 171; The Ins. Co. of N. Am. v. same, 23 W. N. C., 174.

Unless a decision can be shown that any restriction can be put on the rights of an insurer to limit the risks which according to old form of policy "he is contented to bear," no question of public policy can arise. The only question is what interest the underwriters intended to insure. The warranty in the policy leaves no room for doubt as to the meaning of the parties. Parties may make what terms they please in contracts of insurance. It is a contract of indemnity upon the terms and conditions specified in the policy. The courts can put a reasonable construction on a policy of insurance where there is a doubt as to its terms. But nothing will justify a court in not regarding the express terms of a contract in a policy, so as to create an insurance of a different interest than that intended. "The parties made their own contract, and so long as the terms of it are clear it must put an end to all strife about what was intended." Per Ellsworth, J., in Glendale Manfg. Co. v. Protection In. Co., 21 Cow., 31; Richardson v. Mellish, 2 Bing. (9 E. C. L.)

It has never been held that a carrier can compel the shipper as part of the terms on which as a public carrier he will accept the cotton that it shall be insured for his benefit or that it shall be insured at all. The Hadji, 22 Blatch., 235.

The stipulation not to give the carrier the benefit of this insurance is in the form of a warranty, not of a condition. "A warranty is a stipulation of the assured," Mr. Parsons (1 Parsons on Marine Ins., 337) says, "that certain things exist or shall exist, or have been or shall be done." Thus the warranty is equally binding and a breach of it equally fatal whether the thing warranted be material or immaterial. Nor is it any legal excuse for the breach or any protection against its consequences that the breach was not intended by the insured and can not be imputed either to his design or fault.

With a breach of the warranty the insurance falls and is at an end. Hahn v. Hartley, 1 Tenn., 343; 2 Id., 189; Trask v. State M. F. Ins. Co., 29 Pa. St., 198; Girard F. & M. Ins. Co. v. Hebard, 95 Pa. St., 45; Texas Bank. & Ins. Co. v. Stone, 49 Texas, 4; Cedar Rapids Ins. Co. v. Spring, 16 Brads. (Ill.), 248.

The insured had attempted to use the policy for a purpose forbidden by its terms, and the policy became vitiated both as a means of indemnity to the insured named in it and the carrier who attempted to abuse its

terms.    There could be recovery by neither.    Carstairs v. Insurace Co.,. 18 Fed Rep., 473.

*Hume & Kleberg,* also for appellant.—It is a well established rule of the law that though a contract in general restraint of trade is void, one in partial restraint of trade will be upheld.    Tested by this rule the war- ranty is legal and valid, for even admitting for argument's sake that said warranty is a limitation upon the alienation of the policy after loss, such limitation is but partial, affecting only the particular carrier in whose custody the subject matter of insurance may be injured or destroyed. Jeffery v. Graham, 61 Texas, 481; Cowell v. Springs Co., 100 U. S., 55; 41 N. Y., 442; 25 Conn., 242; 14 Kan., 616.

The warranty not being in general restraint of trade does not offend against public policy, because the public interest is in no way affected thereby.    So far as the general public is concerned the warranty imposed no restraint upon the sale of the policy after loss, but leaves the assured free to sell to whomsoever he pleases.    Smith on Con., 241–243; Dev- lin on Deeds, secs. 963, 965.

The warranty not being in restraint of trade nor opposed to public policy and offending against no other rule of law, was a legal and valid contractual stipulation between the insurance company and Callender & Magnus, and by accepting a bill of lading which provided for the trans- fer of the insurance to the carrier the assured violated the express stipu- lation of the warranty, whereby the policy was forfeited.    Appellees ac- quired no greater rights under the policy than their assignors, and especially so in this case, where the policy antedates the bill of lading by several months, thereby charging appellees with notice of its provisions. 63 Texas, 475; May on Ins., secs. 157, 156.

The warranty in no manner restrains, limits, or circumscribes the right to sell or alienate the policy after loss, and hence in no way conflicts with the rules of law which forbid contracts in restraint of trade or against public policy, nor does it in any way abridge any of the incidents or rights of ownership in property.    Carstairs v. Mechanics' and Traders' Ins. Co., 16 Am. and Eng. R. R. Cases, 142.

Irrespective of what the rights of Callender & Magnus may have been, appellees under the particular circumstances of this cause have no legal claim against appellant.    Hall & Long v. R. R. Cos., 13 Wall., 367.

The warranty in the policy which provides that the insurance shall not enure to the benefit of any carrier is against public policy and in re- straint of trade because it is an attempt upon the part of insurance com- panies by the insertion of a new condition in their policies to violate a recognized law of the land, and to prevent owners and carriers from making contracts which the courts have pronounced to be valid and reasonable.    British Foreign Marine Insurance Company v. G. C. & S. F.

Ry. Co., 63 Texas, 475; Phœnix Ins. Co. v. Erie & West. Trans. Co., 117 U. S., 312; Rintoul et al. v. N. Y. Cent. R. R. Co., 21 Blatch., 439; Platt v. R. Y. R. & C. R. R. Co., 32 Am. and Eng. R. R. Cases, 517.

It having become the settled law of the land by adjudications of this court, of the Supreme Court of the United States, and of other courts, that the carrier may stipulate with the shipper for the benefit of any insurance which might be effected upon or on account of the goods, and usages of trade and modes of doing business having grown up and become a part of the settled business policy of the country under these decisions, insurance companies will not be permitted to unsettle this law and vitiate this policy by the insertion of a new clause in their contracts of insurance.

Irrespective of the conditions of the bill of lading and of the policy, the appellees are entitled to recover under the particular facts of this case because the policy was transferred by Callender & Magnus to them after the loss had occurred, and it is against the law for insurance companies to stipulate that assignments shall not be made after losses occur. East Texas Fire Ins. Co. v. Coffee, 61 Texas, 287; May on Ins., sec. 386, and authorities cited.

STAYTON, CHIEF JUSTICE.—This case comes before us on an agreed statement made from the record and signed by counsel, which is as follows:

"On June 22, 1885, appellant, a corporation having its domicile in the State of Pennsylvania, issued an open policy to Callender & Magnus, cotton buyers, residing in New York City. This policy was renewed September 1, 1886, for one year, subject to certain conditions and the following express warranty: 'Warranted that this insurance shall not enure to the benefit of any carrier.'

"Under the terms of the open policy all cotton purchased by Callender & Magnus or by their agents for them in the United States was at once covered by the same as soon as purchased, they reporting as soon as practicable to the insurance company the particulars of the purchase as to marks, value, amount of insurance desired, etc. The insurance company would then issue to Callender & Magnus a certificate of insurance giving date from which insurance began, number of bales insured, amount of insurance, locality of cotton, and its intended route of shipment. But the insurance as such was complete under the said open policy as soon as the cotton was purchased, even before the certificate was issued, the certificate being only a statement giving the details of the particular transaction, such as values, amount insured, and route of shipment, but without in any manner altering or modifying the terms and conditions of the open policy or the conditions and warranty contained in the afore-

said renewal thereof. The purpose of an open policy is convenience to the assured and to insure his property from the very moment of its acquisition. This could not be done if he was required to make a separate contract for each lot of cotton which he may purchase in different parts of the country. The danger and risk which would necessarily intervene after the purchase is made until insurance could be effected by special policy, would have to be borne by the owner. Under the open policy, however, the owner is protected by the insurance upon all purchases no matter where and when made, and though loss should occur before report of the purchase to the insurer or issuance of the certificate of insurance. Premiums under the policy in this case were payable monthly upon amounts insured thereunder for that period.

" On December 9, 1886, Callender & Magnus, by one of their agents, bought and became the owners of fifty bales of cotton at Mexia, Texas. The advice of this purchase reached the office of the appellant insurance company some time thereafter, and said company on the 16th of said month issued to Callender & Magnus a certificate of insurance.

" The certificate provides that it represented and took the place of the policy and conveyed all the rights of the original policy holder (for the purpose of collecting any loss or claim) as fully as if the property was covered by a special policy direct to the holder of the certificate; and the certificate was dated New York, December 16, 1886.

" On December 11, 1886, Callender & Magnus, by their agents, delivered to appellees, who are common carriers, at the town of Mexia, Texas, to be shipped to Liverpool, England, the said fifty bales of cotton, and on the same day appellees delivered to the said agents of Callender & Magnus a bill of lading containing among other things the following provision: 'In case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation whereby any legal liability shall or may be incurred, that company alone shall be answerable therefor in whose actual custody the same be at the time of the happening of such loss, detriment, or damage, and the carrier so liable shall have full benefit of any insurance that may have been effected upon or on account of said cotton.'

" On December 12, 1886, while said cotton was in the custody of appellees in their capacity as common carriers, forty bales thereof, of the value of $1725.34, were totally destroyed by fire. The appellant was notified of the destruction of the cotton December 21, 1886.

" When the appellant issued the certificate of insurance to Callender & Magnus it had no notice or knowledge of that clause in the bill of lading which provides that the carrier of said cotton shall have the benefit of any insurance which may have been effected upon or on account of said cotton. The fact that such clause was contained in said bill of lading was first brought to the knowledge of appellant when the bill of lading

was presented to it as one of the proofs of loss required some time after December 21, 1886.    Appellees had no actual notice of the warranty in the policy stipulating that the insurance should not enure to the benefit of any carrier, and being liable for the loss of the cotton as common carriers paid the same, whereupon Callender & Magnus transferred them the certificate of insurance.    Appellant declined to pay the policy to Callender & Magnus because the same had been forfeited by their acceptance of the bill of lading.    Appellant declining to pay for the loss, appellees on September 27, 1887, sued in the District Court of Galveston County.    That court held the clause in the policy providing that the insurance shall not enure to the benefit of any carrier to be void, because in restraint of trade and against public policy, and rendered judgment for appellees for $1725.34.    From this judgment the Insurance Company of North America appeals, and the following questions of law embraced in the assignments of error are now by agreement respectfully submitted to this court for its decision:

" ' Is the warranty in the policy which provides that the insurance shall not enure to the benefit of any carrier a valid and lawful stipulation in the contract of insurance, and does a violation thereof forfeit the policy, or is said warranty in restraint of trade and contrary to public policy?'

" ' Under the particular facts of this case, irrespective of any rights which Callender & Magnus may have had under the contract of insurance, can appellees under the law recover against the appellant?' "

It must now be held that so much of the clause in the bill of lading as provided that "the carrier so liable shall have full benefit of any insurance that may have been effected upon or on account of said cotton" is not invalid by reason of its contravening any rule based on public policy. Insurance Co. v. Railway Co., 63 Texas, 475; Insurance Co. v. Transportation Co., 117 U. S., 312; Rintoul v. Railroad, 16 Am. and Eng. R. R. Cases; Platt v. Railroad, 32 Am. and Eng. R. R. Cases, 519; Jackson Co. v. Insurance Co., 139 Mass., 508.    In the case first referred to the bill of lading was prior in point of time to the policy, which recited the fact of shipment, and it was held that this was sufficient evidence that the policy was issued with notice of the right secured by the carrier by contract and in subordination to that right.

The same ruling was made in the second case cited, in which it is assumed that the contracts of carriage and insurance were made simultaneously, the insurer being ignorant of the clause in the bill of lading which subrogated the carrier to the rights of the shipper under the policy.

In disposing of the case the court said:    "The policy contained no express stipulation upon the subject, and there being no evidence of any fraudulent concealment or misrepresentation by the owner in obtaining the insurance, the existence of the stipulation between the owner and the carrier would have afforded no defense to an action on the policy, ac-

cording to the careful judgments rendered in June last and independently of each other, the one by the English Court of Appeal and the other by the Supreme Judicial Court of Massachusetts. Tate v. Hyslop, 15 Q. B. D., 568; Jackson Co. v. Boylston Ins. Co., 139 Mass., 508."

In Insurance Company v. Railway it appeared that the policy issued sometime before the shipment was made, and while recognizing the validity of a contract between the shipper and carrier whereby the latter should become entitled to the benefit of insurance made by the former in a proper case, the court said: "The policies here were all taken out some weeks before the shipments were made, although of course they did not attach until then, and recovery upon neither of them could have been had except upon condition of resort over against the carrier, any act of the owners to defeat which operated to cancel the liability of the insurers. They could not, therefore, be made available for the benefit of the carrier."

In Jackson Company v. Boylston Mutual Insurance Company it was assumed that the carrier might contract for the benefit of insurance secured by the shipper, and the inference to be drawn from the report of the case is that the policy made the basis of the action was issued after the right of the carrier to the benefit of insurance had attached.

The shipper bought through a broker who it seems did not read the receipts securing to the carrier the benefit of insurance.

The railroad's receipts with draft attached were forwarded by the broker to the shipper, the draft cashed, notice given to the insurance company of the shipments, and the policy presented that the shipments might be endorsed thereon, which was done.

This seems to have been the act which applied the insurance to the cotton destroyed while in transit, and no inquiry was made as to the terms of shipment when insurance was thus obtained.

In disposing of the case the court said: "That the contract between the plaintiff and the carrier was binding being conceded, we are brought to the conclusion expressed in the ruling of the judge who presided at the trial, 'that in a case where there was no intention to deprive the insurance company of its rights, and no intentional fraud and concealment, and where the plaintiff (shipper) was actually ignorant of the stipulation relied on at the time it made the insurance or obtained the indorsement on the policy, and was ignorant when it ordered the cotton that any such stipulation would be made, and there was no actual misrepresentation, an insurance company insuring property *in transitu*, making no provision in regard to the nature of the contract of carriage, and not requesting to see the bill of lading or receipt, and making no inquiries about them, must be held to have insured it under and subject to the actual contract of carriage, so far as it was a lawful contract.'"

Under this state of facts it was held that the carrier by virtue of its

contract became subrogated to all rights held by the shipper against the insurer, and that thus was defeated the right of the insurer to be subrogated, on payment of the loss, to the right against the carrier, to which but for the contract of shipment the insurer under the settled principles of law would have been entitled.

This case, while holding that the right of the insured when dependent only on his relation to the carrier to modify by contract the rule of subrogation can not be questioned, concedes that no contract made between the insured and the insurer whereby the right to modify the general rule of subrogation is withdrawn from the insured can be controlled by a contract between the insured and the carrier.

In Insurance Company v. Calebs, 20 New York, 175, it was held that a contract between a carrier and shipper, substantially such as is set up in this case, was valid, and on payment of a loss under a policy issued after the contract for carriage was made, the right of subrogation was denied to the insurer.

In disposing of the case the court said: "It is argued that this clause in the contract did not exempt the carrier from liability to the plaintiffs, because it was made without their knowledge or consent and was an attempted fraud upon their rights.    But this is not so in point of fact so far as the defendants are concerned.    The contract between them and the insured was made before any insurance was obtained, and though it sought to secure a right to the defendants in case policies were procured, yet on their part no fraud was contemplated on the plaintiffs; none is found by the court.    It is true the case states that the plaintiffs did not know of the contract when they issued their policies.    That was a matter between them and the insured.    If there was any fraudulent concealment of facts on the part of the latter at the time they obtained their insurance it would have avoided the policies and they would not have been bound to pay the loss.    If they paid it voluntarily they are not entitled to be subrogated."

In this case, as in the others but one, considered, there was no contract between the insured and insurer at the time the contract between the carrier and the insured was made which restrained them from modifying or entirely annulling the ordinary rule of subrogation if they saw proper to do so by contract.

The cases referred to hold:    1. That contracts such as contained in the carrier's contract before us are valid as between the carrier and shipper.    2. That a policy issued with knowledge that the insured property is in transit, in the absence of inquiry as to the terms of shipment, misrepresentation as to this or other matter material to the risk, or fraud, will be deemed to have been issued in subordination to the contract of shipment which may control the right of the insurer to subrogation.

None of them, however, hold that a contract of insurance existing

when a contract of carriage is made, whether the carrier have knowledge of the insurance contract or not, can be controlled by a subsequent contract between the insured and the carrier and the insurer's right to subrogation thus be destroyed, even where there is no express provision in the policy which forbids this.

It must be that in the absence of stipulation in a policy to the contrary the insured may without invalidating his policy make such contracts with a carrier limiting the liability of the latter as may be lawful under the laws in force at the place of shipment, or such other laws as may be applicable; for the parties ought to be presumed to contract with reference to the right of the carrier to refuse to receive and transport freight without contract limiting his liability in so far as this may lawfully be done under the law governing the shipment. With the carrier's liability lawfully restricted by contract, a loss resulting from a cause within the restriction would not give right of action in favor of the insured shipper against the carrier, and where this is the case there can be no subrogation under the general principles applicable to the subject.

The contract relied on by the carrier in this case was not one it had the right to have made or otherwise the right to refuse to receive the cotton for transportation, and it ought not to be presumed that the parties to the insurance contract contemplated that the affreightment would be made practically at the entire risk of the insurer, when the carrier had no right to insist that this should be so, and where the general rules of law with reference to which they ought to be presumed to have contracted fix on the carrier the ultimate liability for a loss occuring while the freight is in his hands, unless the loss arises from a cause that relieves the carrier from liability.

The carrier's liability is held to be the ultimate liability, simply because the loss of property while in his custody as carrier results in fact or in legal contemplation from his failure of duty, while that of the insurer is held to be that only of an indemnitor in all cases in which the insurance contract does not stipulate to the contrary or in which a contrary intention may not fairly be inferred from the time and circumstances of the contract.

It seems to us under the facts of this case, leaving out of consideration the warranty contained in the contract of insurance, that the right of the insurer to subrogation on payment of the loss is as well secured when there is not, as well as when there is an express contract that the right to subrogation shall exist; and that a contract between the insured and the carrier which defeats this right would defeat the right of the insured or the carrier to recover at all upon the contract of insurance. It has been held when a policy expressly gives the insurer the right to subrogation against the carrier that a subsequent agreement between the insured and the carrier that the latter shall be subrogated to the right of the insured avoids

the policy.   Carstairs v. Insurance Co., 16 Am. and Eng. R. R. Cases, 142.   The correctness of this ruling was recognized in Jackson Co. v. Insurance Co., 159 Mass., 511.

If the insured wishes insurance that will place the ultimate liability on the insurer let him so make his contract as to protect the carrier afterward to be selected by him, compensate the insurer for the increased risk of ultimate loss, and be in position to contract with the carrier for reduction in freight such as may be proper by reason of this shifting of the ultimate risk of loss from the carrier to the insurer.

Passing from this, however, it is certainly true that the insured could not confer on the carrier a right they did not possess.

The warranty which the insurance company seeks to assert to avoid liability to the carrier was one promissory in character, in which the parties contracted *"that this insurance shall not enure to the benefit of any carrier."*

This if a valid provision cuts off any construction of the policy whereby it could possibly be held to confer any right to benefit under it on a carrier of the property insured, and it deprives the insured of the power to confer on such carrier any right to benefit under the policy by contract or otherwise.

By the warranty we understand the parties to have contracted that the contract of insurance should be avoided—should cease to be operative—if during the time specified for its continuance the insured should so contract with a carrier of the property insured, as between themselves even, to give to the carrier any right to benefit under the policy.

The purpose of this provision evidently was to deny in terms to the insured the right or power to confer on the carrier any right to benefit through the policy such as the cases to which we have referred held may be conferred on the carrier by contract with the shipper made before insurance is obtained.

The insurer in effect says in the face of the policy, and to this insured assents:   " This contract shall be binding on me only so long as you refrain from contracting with any carrier you may employ to transport the insured property that he shall have right to any indemnity from me for loss occuring while the property is in his possession as carrier from a cause which under the rules of law applicable to the contract of carriage would give you cause of action against such carrier; and I will not be longer bound by this contract if you in any manner release such carrier from that full liability to you and to me which will exist under a lawful contract of affreightment for loss of the insured property while in his hands as carrier."

By requiring the carrier's liability to continue the ultimate liability the insurer doubtless intended to make the carrier's own interest some guarantee against its own negligence or misconduct.

. In the very act of making the contract through which the carrier in this case claims, the policy ceased to be of any effect whatever, as to the particular cotton at least, and from that time forward neither the insured nor the carrier could assert right under it based on the particular loss, if the warranty was valid.

The court below held that the warranty was invalid, because in restraint of trade and against public policy. The insurance company was under no legal obligation to issue a policy at all, but if it did it had the right to place a provision in the policy such as it did, and in so doing it neither contravened any public policy nor restrained trade.

It is said that the carrier had no notice of the clause in the policy now relied upon, and that for this reason it would be contrary to public policy to permit it now to rely upon the warranty. The law does not require that notice shall be given to third persons of contracts of insurance, nor does it provide a mode in which such notice may be given whereby all persons will be bound. If the want of notice of a contract become important in a contest between a party to it and a third person who has sought to acquire by contract an interest or right antagonistic to the right the former contract gives, it is not because the former contract was illegal, but because some equitable consideration has arisen on account of which the person who has kept secret his right ought not to be permitted to assert it against one whom he has misled by his silence.

If the mere want of notice of contract would place them on the list of contracts condemned because contrary to public policy, then there would be a long list of condemned contracts not heretofore even suspected of illegality.

The carrier knew that no right could be acquired against the insurer through a contract with the insured other than the latter possessed and had power to convey, and if it desired to know the extent of that right it was its duty to inquire.

Appellee makes this inquiry: "Could the insurance company and the owner of the cotton, without the knowledge or privity of the carrier, make a contract between themselves by which the carrier would be deprived of its well recognized legal rights? Is not such a restriction against public policy and in restraint of trade?"

Neither the knowledge nor the privity of the carrier to the insurance contract was necessary to its legality.

The *carrier* had no *legal* right, recognized or unrecognized, to have the insurance company or the insured to make any contract of insurance whatever, much less to make one which the insurance company was under no obligation to make, and had refused to make. The terms of the policy neither restrained appellee nor any other carrier from making lawful contracts for carriage at any place nor from carrying them out any-

where; they simply denied to the insured the right to make a contract which would bind the insurer as the carrier desired it to be bound.

The further inquiries and suggestions are made by appellee:

"Then knowing the law—knowing that the carrier had the right to stipulate for the benefit of any insurance that may have been effected—knowing that the shipper could not refuse to accept from the carrier a bill of lading with that provision, will appellant be permitted to receive premiums and at the same time insert a clause in its policy of insurance which would exonerate it from the payment of any loss?

"Appellant refused to pay the policy to Callender & Magnus because the same had been forfeited by their acceptance of the bill of lading. This excuse might have had some force if they had any option, but it was the law of Texas and of the United States that the carrier had the right to issue such a bill of lading. Callender & Magnus had no right to refuse to receive it."

Appellant, corporation though it is, is affected with knowledge of the law; but admitting this, we think it can not be charged with knowledge that the propositions here made are the law.

It knew that the carrier might stipulate for the benefit of such insurance as the insured had the power and right to convey, but it did not know that the insured and carrier might make a contract for it without its consent and contrary to the express stipulations of the policy.

We think it did not know that the shippers had not the right to reject the bill of lading on which appellee now bases its right containing the clause in regard to insurance, for we understand it was the right of the shippers to reject that bill of lading and to have their cotton transported on one that did not contain that provision.

A refusal to give the carrier the benefit of insurance already secured would be in effect but a refusal to insure for the benefit of the carrier, and this a carrier can not require as a condition on which it will receive and transport freight.

If there be any question of unearned premium it is not presented in this case.

The policy having ceased to be operative, and that being the foundation of all obligations on the part of the insurance company, the certificates subsequently issued and transferred subsequently to the loss conferred no right on the carrier.

The judgment of the court below will be reversed and judgment here rendered for appellant.

*Reversed and rendered.*

Delivered March 1, 1889.