**MISSISSIPPI VALLEY BARGE LINE COMPANY, Appellant,**

v.

**T. L. JAMES & CO., Inc., et al., Appellees.**

**MISSISSIPPI VALLEY BARGE LINE COMPANY, Appellant,**

v.

**T. L. JAMES & CO., Inc., Appellee.**

**Nos. 16469, 16470.**

United States Court of Appeals
Fifth Circuit.

May 3, 1957.

Rehearing Denied June 25, 1957.

Selim B. Lemle, New Orleans, La., Lemle & Kelleher, New Orleans, La., of counsel, for appellant.

Charles E. Dunbar, III, John W. Sims, New Orleans, La., Jas. Hy. Bruns, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

These two appeals from judgments in related actions, arising out of the sinking of the LaBelle and consolidated for trial, present for our decision two primary questions: one, whether the district judge correctly held [1] that the sinking was due to the negligence and fault of the appellant; the other, if so, whether the appellant was entitled to invoke the exoneration afforded by Section 3 of the Harter Act and the defensive clauses of the bill of lading.

The answer to the first question depends merely upon an appraisement of the facts in evidence. The answer to the second question depends upon whether the transportation involved was carriage or towage, and whether if it was carriage, Valley was entitled under the circumstances to invoke Section 3 of the Harter Act. The overall answers to both questions depend upon whether the district judge was correct in his determination of fact and of law as to Valley's liability in connection with the sinking of the barge.

This is the origin of the two actions. In December of 1954, T. L. James & Co., Inc., hereafter called "James", engaged in the general contracting and construction business with offices at Houston, Texas, and Kenner, Louisiana, and Mississippi Valley Barge Line Co., hereafter called "Valley", a common carrier by water, which holds an Interstate Commerce Commission certificate,[2] entered

1. Mississippi Valley Barge Line v. T. L. James & Co., 144 F.Supp. 662.

2. The pertinent provisions of which are:
   "It is hereby certified, That public con-

into an agreement that Valley would transport the Barge LaBelle, supplied and loaded by James with a bulldozer and other miscellaneous contractors' equipment, from New Orleans, La. to Cheatham Dam, Tennessee, for an agreed upon charge, and would return the barge to New Orleans empty without charge. En route the barge careened and dumped its load and then sank in the Mississippi River, thereby precipitating this litigation.

It was initiated by a suit at law filed by Valley against James for the freight money and the Federal transportation tax due thereon for transporting the cargo of contractor's equipment pursuant to a provision in Valley's tariff on file with the Interstate Commerce Commission for the collection and payment of the transportation charges, notwithstanding the fact that the cargo was lost en route.

Subsequently James, as bareboat charterer of the Barge LaBelle, sued in admiralty for its damages allegedly incurred because of the sinking of the barge, and James, together with Brown & Root, Inc., doing business under the name of Louisiana Bridge Company, (hereinafter called "Shippers"), alleging that they were the owners of the contractors' equipment laden on the Barge LaBelle, joined in this admiralty action claiming the damages allegedly sustained by them as such cargo owners resulting from the sinking of the barge. Valley filed a 56th Rule Petition against James alleging that James had warranted that the Barge LaBelle was seaworthy and the cargo properly stowed thereon and demanded that in the event Valley be held liable for loss of or damage to the Barge LaBelle or its cargo, due to unseaworthiness of the barge or improper storage of cargo thereon, Valley be awarded a decree for a similar amount over against James.

In the suit by James and Shippers against Valley for their damages, the District Court entered an interlocutory decree holding that the transportation of the contractors' equipment on the Barge LaBelle constituted towage, and not carriage, and that Valley was liable for damages for negligent towage. The district judge dismissed Valley's 56th Rule Petition against James for alleged breach of warranty of the seaworthiness of the Barge LaBelle and the propriety of the stowage of the cargo thereon. In the suit by Valley against James for its freight money, the district judge held that the question had become moot by reason of his holding that Valley was at fault for negligent towage, since permitting it to recover its freight charges and the transportation tax thereon would simply increase the Shippers' damages. Accordingly, he dismissed Valley's suit against James.

Appealing from these decrees in Docket Nos. 16469 and 16470 of this court, Valley is here thus presenting, under six specifications of error [3] the two prime questions with their corollaries:

venience and necessity require operation by the Mississippi Valley Barge Line Company as a common carrier, in interstate or foreign commerce, by nonselfpropelled vessels with the *use of separate towing vessels in the transportation of commodities generally and by towing vessels in the performance of general towage, between ports and points along * * ** [Here follows a lengthy description of waterways, including the route from New Orleans to Cheatham Dam, Tennessee, over the several waterways involved].
"It is ordered, That the Mississippi Valley Barge Line Company be, and it is hereby, authorized to perform the service specified above, subject, however, to such terms, conditions, and limitations as are now, or hereafter may be, attached to the exercise of such authority from this Commission." (Emphasis supplied.)

3. "1. The court erred in holding that the transportation contract between T. L. James & Co., Inc. and Mississippi Valley Barge Line Company was a contract of towage and not a contract of carriage.

"2. The court erred in holding that the movement of the cargo of contractors' equipment loaded aboard the Barge LaBelle was towage and not common carriage.

"3. The court erred in failing to give effect to Sec. 3 of the Harter Act and

"The principal question presented is whether contract for the transportation by Valley of the contractors' equipment laden by the Shippers on board its barge LaBelle was carriage or towage. While corollaries to this principal question are:

"(1) If the movement was carriage and the defense of the exoneration of the carrier afforded by Section 3 of the Harter Act is available, then was there any failure in care and custody of cargo which would render the carrier liable for damage thereto?

"(2) If the transportation of the contractors' equipment constituted towage, was there any negligence on the part of the tower which renders it liable for damage to cargo?

"The second question involved, which necessarily arises if your Honors determine that the transportation of the cargo was carriage, is the status of the movement of the Barge LaBelle. Was it carriage or towage, and what is Valley's liability, if any, for the sinking of the barge?"

In support of its contention that the transportation of LaBelle with its cargo in tow of a tug is carriage and not towage, appellant plants itself firmly on Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 369, 71 L.Ed. 663, a case where, unlike here, the carrier was the owner and operator of both barge and tug. There the Supreme Court, reversing the opinion of the Ninth Circuit, 3 F.2d 759, and saying: "Towage service is the employment of one vessel to expedite the voyage of another", went on to say: "Here, while there was towage service, the contract actually made with re-spondent was not to tow a vessel, but to transport goods, and plainly that contract was the contract of affreightment."

Based on this decision and arguing that the line of demarcation between carriage and towage is definite and unmistakable, appellant urges upon us that, in disregarding the Sacramento case as controlling and supporting his opinion by citing Cornell Steamboat Co. v. United States, 321 U.S. 634, 64 S.Ct. 768, 88 L.Ed. 978, the district judge erroneously rejected an opinion which is controlling on its facts and law, on the basis of an opinion which is without pertinence to the question dealt with here, whether the contract was one of towage or one of carriage.

Realizing the pinch of the argument that in the Sacramento case both barge and tug were owned by the carrier, whereas in this case the towed vessel was not owned by it, appellant seeks to avoid the force of the argument based upon this fact by pointing out that in performing inland water carriage of cargo, a shipper may supply an instrumentality used in the carriage, and, of course, a barge is such an instrumentality, and cites and relies on In re O'Donnell, 2 Cir., 26 F.2d 334 where the court applied the doctrine of the Sacramento case to a case in which, while there was no common ownership of the tug and barge, the tug owner and the barge owner were sharing expenses and profits, and, if not actually partners, were participating in a joint venture.

On the question whether there was negligence in the handling of the barge, as the district court held, appellant argues vigorously and long that there was no negligence, and that irrespective of

---

failing to exonerate Mississippi Valley Barge Line Company.

"4. The court erred in failing to give effect to the tariffs of Mississippi Valley Barge Line Company and to the terms and conditions of the bill of lading issued and delivered to the Shipper, T. L. James & Co., Inc.

"5. Alternatively, if the movement was towage, then the court erred in finding

negligence on the part of Mississippi Valley Barge Line Company in the performance of such towage."

While in Docket No. 16,470 Valley assigns as additional error:

"The district court erred in holding that Valley was not entitled to recover its freight charges and the Federal transportation tax thereon from James."

the terms of Valley's tariff, Valley is not liable.

Recognizing that both carriers and towers which tow interstate are subject to regulation under Part III of the Interstate Commerce Act, 49 U.S.C.A. § 901 et seq., Cornell Steamboat Co. v. United States, supra, and that all common carriers, whether engaged in the carriage of cargoes, are required to file with the commission their tariffs and to include therein any rules or regulations which in anywise change, affect or determine any part or the aggregate of such rates, fares, or charges, or the value of the service rendered to the purchasers, shipper, or consignee, appellant points to the fact that Valley did file its tariff and that it contained all the rates, rules, and regulations applicable to freight transported by Valley and consisted of A. B. & C. rates. As a part of this tariff, appellant points to the provision applicable where barges are furnished for transportation, that under "C" rates, which it claims was the rate under which this shipment moved, the customer warrants that barges are seaworthy and properly equipped, and that the shipment is properly stowed therein. In addition, it points to a provision of the tariff outlawed in the Bisso case,[4] a case of towage, in effect that the towage will be performed solely at the risk of the tow and its cargo, including the risk of negligence of the towing craft, its master, pilot, officers and crew, and of the contractor and its agents, servants, employees and representatives, all of whom in respect to the towage shall become and be the agents and servants of the tow and its owners. So pointing, it seeks to found upon the fact that this provision is in a tariff a claim that it is not subject to the holding in the Bisso case.

The appellees, on their part, standing firmly by the decision of the district judge, urge upon us that it was correct in all respects and that the decree should be affirmed throughout. Taking issue with the appellant as to the effect of the Cornell case, they argue that, though that was a litigation originating before the Interstate Commerce Commission, 250 I.C.C. 301, continuing through the decision of the three judge court, Cornell Steamboat Co. v. United States, D.C., 53 F.Supp. 349, and concluding with what it calls the landmark opinion in Cornell Steamboat Co. v. United States, 321 U.S. 634, 64 S.Ct. 768, 88 L.Ed. 978 whatever force and effect the Sacramento case had, has been destroyed or greatly limited by this decision.

Citing Petition of Reliance Marine Transp. & Const. Corp., D.C., 89 F.Supp. 272, holding that the existence of a published tariff did not serve to transform a private carriage into a public carriage, they seek to strike down all weight attached by appellant to its published tariff. Pointing to the basic finding of the district judge, "This litigation presents * * * an attempt to apply the law of common carriage to a contract of towage and thus avoid the public policy restrictions against release from liability from negligence clauses in towage contracts", appellees cite other recent district court cases, each holding that a contract such as the one here, which was claimed to be one of carriage, was in fact one of towage.

Finally, pointing to the facts: that the opinion in the Sacramento case turned entirely upon the fact that both tow and tug were owned by the carrier; that the Supreme Court held that the contract was not one for towage; that in the O'Donnell case, supra, the court in effect held that the owner of the tug and the owner of the barge had made a joint contract of carriage with the shipper; appellees insist that the facts[5] here are entirely different.

---

4. Bisso v. Inland Waterways Corp., 349 U. S. 85, 75 S.Ct. 629, 99 L.Ed. 911.

5. Mr. Walters for James testified: "I contacted Mississippi Valley from Houston requesting them to give me a price for the movement of the barge from New Orleans to Ashland City or Cheatham Locks, Tennessee, and received a minimum cargo rate for 300 tons which was less than the weight of the cargo."

Because the district judge, in his opinion, fully and adequately set out the facts bearing on the question of negligence in handling the LaBelle, and we agree fully with his statements of the facts and his findings on the issue of negligence, we will content ourselves with saying so and that unless appellant is entitled to be relieved from liability under the Harter Act or under some defensive clause of its bill of lading, the judgment must be affirmed. Addressing ourselves, therefore, first to the claim that the clause, exempting it from liability for negligence and in effect purporting to make its own employees the agents of the barge owner, exonerated appellant it is sufficient to say that the validity of this clause has been definitely and conclusively settled against it in the Bisso case, and that, as pointed out in the opinion of the district judge below and in the briefs of the appellees here, the fact that this illegal clause is embodied in a tariff cannot make it legal.

Upon the crucial question, whether the contract was and was intended to be one of towage rather than of affreightment, we are of the clear opinion that no other reasonable view can be taken of the evidence than that the district court took. The fact that both the oral agreement and its written *confirmations provided for moving the barge;* the fact that nothing was said at the time of the contract about the matters now so strongly urged, *that the agreement was not one of towage but one of affreightment;* and the fact that the bill of lading was not issued until some-

time after the loss; not only tends strongly we think to support but also to compel the view that the parties were contracting not for affreightment but for a towage service and that the district judge was right in so holding.

While, therefore, we are inclined to the view that the undisputed facts do not bring Valley within the essential requirements of Sec. 3, *"If the owner of any vessel* transporting merchandise or property to or from any port in the United States of America, *shall exercise due diligence to make the said vessel in* all respects seaworthy * * *"* (emphasis supplied), in that Valley was not the owner of the vessel LaBelle in which the merchandise was loaded and Valley did nothing whatever to make the vessel LaBelle seaworthy, and it would be in our opinion a perversion of the statute, which was designed to encourage and require owners to make their vessels seaworthy, to permit Valley to invoke the section in connection with a carriage where it neither owned, nor had part in conditioning, the vessel in respect of which the exoneration is claimed, we do not, because of our conclusion that the contract was for towage, express a firm opinion on this point.

Finally, as to the alternative holding of the district judge that if the contract was for affreightment the LaBelle was itself the cargo, and the provision in the Harter Act which prevents the application of the section, that the lack of diligence which is excused is not with respect to the care of the cargo, defeats its application here, while at first blush

---

Nothing was said about affreightment. Only towage was discussed. Nothing was said about a bill of lading or its contents. The bill of lading was in fact received several weeks after the cargo was lost.

While Mr. Thompson for Valley did say that he mentioned the word "tariff" in the telephone conversation, he admitted that none of the tariff provisions were quoted or discussed, and he did not deny that the subject of the conversation was the movement of the barge.

The confirmatory letter of Dec. 8th, from Thompson to Walters began, "This will confirm recent conversations concern-

ing your barge LaBelle and subsequent empties which you desire to move from New Orleans to Cheatham Dam, Tennessee and return."

The telegram of the same day read, "Will move barge LaBelle Dec. 11, to Cheatham, rate $6.30 per net ton plus 15%. Minimum weight 300 tons."

Walters replied by wire, "Consider this formal acceptance your offer of barge movement."

It was only after the barge was lost that the bill of lading was issued and the present contentions with regard to the contract were put forward.

the idea seems fanciful, it seems no more fanciful than the general claim of the appellant that in this kind of case it can escape the consequences of its negligence in connection with the towing of the LaBelle by claiming the protection of the tariff and of the Harter Act. Since, however, we have concluded to affirm the judgment on the ground that the movement was one of towage, it will not become necessary to, express and we refrain from expressing a definite opinion on this point.

The judgment was right. It is affirmed.