**COMMERCE OIL CORPORATION,**
Appellant,

v.

**DIXIE CARRIERS, Inc., owner of Barge THE DXE–78, Appellee.**

No. 16919.

United States Court of Appeals
Fifth Circuit.

Feb. 28, 1958.

Henry J. Read, Montgomery, Barnett, Brown & Read, New Orleans, La., for appellant.

Geo. B. Matthews, Lemle & Kelleher, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and HANNAY, District Judge.

HANNAY, District Judge.

This is an appeal from a decree dismissing a libel filed by the Appellant, the owner of a shipment of lubricating oil, against Appellee, to recover damages sustained to the cargo shipped by a barge, which departed June 1, 1951, at about 10:00 P.M., in tow of Appellee's Tug Ben B, from Goodhope, Louisiana, to Houston, Texas.

The contract of carriage relieved the Appellee from liability for cargo loss or damage if it exercised due diligence to make the carrying vessel seaworthy, and if it exercised reasonable care in the receipt, storage, handling, care and delivery of the cargo.

The contract further incorporated the protection of Section 3 of the Harter Act (Section 192, Title 46 U.S.Code Annotated). This Act relieves the owner of the vessel from liability for loss resulting from improper navigation or management of the ship if due diligence has been exercised to make it seaworthy.

The cargo was carried in Barge DXE–78, which was compartmentalized into ten individual tanks. The compartments can be sealed off from each other or organized into one system through the valves connecting them with the main loading or discharging line. When the barge arrived in Houston, it was found that the cargo in all of its ten tanks, which consisted of a straight cargo of lubricating oil of the same type, was contaminated with water which had entered the barge through a hole in its bottom. The damage to the barge was caused by stranding on the concrete riprap located at the entrance of the Harvey Locks.

In addition to the above facts, the findings of the Trial Court are briefly as follows: Appellee's tankerman closed the valves when the loading of the barge was completed. At the time of the barge grounding, the Mate was in charge of the tug, the Master being off watch and asleep in his cabin. The Mate, although being aware of the grounding, did not know of the damage to the tank, and did not report the stranding to the Master until after the end of the voyage. The day after the stranding, the Master saw the barge was about six inches down by the bow. An inspection revealed the rakes were dry, but did disclose that all the valves but those on the No. 5 tanks

were open. The Master ordered them closed to keep the barge from going farther down by the bow. On reaching Vermillion Locks, the tow had to await its turn to enter the locks and, while doing so, all valves to the cargo compartments of DXE–78 were opened. The Master's purpose in doing this was to permit the cargo to equalize itself. The barge then came on an even keel, the valves were closed and the voyage proceeded without further incident to Houston. On arrival, the cargo was found to be contaminated with water.

The findings of the Trial Court are set forth in 156 F.Supp. 256. The Court's Finding of Fact No. VIII. (see page 259) is as follows:

"The proximate cause of the cargo damage was the collision with the rip-rap and the subsequent opening of the valves. Both of these events occurred in connection with the navigation and management of the tow, not in connection with care and custody of cargo."

The alleged errors made the basis of this appeal and strongly urged by the Appellant are, first, that in the management of the tow the Master knew, or should have known, of the bottom damage, and by opening all the valves he jeopardized the entire cargo, and, second, that Appellee's agents did not exercise due diligence to make the barge seaworthy, and that no inspection was made at the beginning of the carriage as to whether the valves were opened or closed.

Replying with equal vigor, Appellee contends that as found by the Trial Judge the "Dixie exercised due diligence to make and the barge was in fact seaworthy" at the inception of the voyage, and that Appellee is not liable for the loss but it is excused as an error in navigation and/or management under the contract between Appellee and Appellant and under Section 3 of the Harter Act.

■ We do not agree that if the barge DXE–78 began her voyage with the valves open she was thereby unseaworthy for the purposes of the cargo,

because since the cargo was not a mixed one but consisted entirely of the same grade of lubricating oil it would be immaterial whether the valves were open or not. Most certainly the vessel was *seaworthy* in that it was "reasonably fit to carry the cargo she had undertaken to transport." See The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241.

■ The action of the Master in equalizing the trim of the barge was an act in the navigation and management of the vessel and therefore excusable under the Harter Act. See Leon Bernstein Company v. Wilhelmsen, 5 Cir., 232 F.2d 771.

The Trial Court found the exemptions of the contract applied and that Appellee was entitled to the benefit of Section 3 of the Harter Act and that Appellee was not liable.

The Trial Court, in its Conclusions of Law, (except for the first conclusion which was that the Court had jurisdiction and venue) found as follows:

"II. Dixie exercised due diligence to make, and the Barge DXE–78 was in fact seaworthy and properly manned, equipped and supplied. The Silvia, 1898, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241. The British King, D.C.N.Y.1898, 89 F. 872, affirmed without opinion 2 Cir., 1899, 92 F. 1018; Jay Wai Nam v. Anglo-American Oil Co., 9 Cir., 1913, 202 F. 822.

"III. The contract here is one of transportation and the tug and barge, being under common ownership (or ownership *pro hac vice*), are to be considered as one vessel and entitled to invoke the provisions of Section 3 of the Harter Act. Sacramento Navigation Co. v. Salz, 1927, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663.

"IV. The acts of the Master of the Ben B in manipulating the valves to the cargo compartments of the DXE–78 were done reasonably and in an attempt to correct the trim of the barge. They related to the man-

agement of the tow and any loss resulting therefrom is excused under the Harter Act and under the provisions of the Release Clause, above quoted. The Silvia, supra; The Mexican Prince, D.C.N.Y.1897, 82 F. 484; The Rudolph Albrecht, Arb. 1930, 1931 A.M.C. 135; The Steel Navigator, 2 Cir., 1928, 23 F.2d 590, 1928 A.M.C. 388; Rooks v. Elliott & Watrous, Inc., D.C.R.I.1946, 65 F. Supp. 325, 1946 A.M.C. 1417."

In support of its position, the Appellee stoutly relies upon the rule of McAllister v. U. S., 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, wherein the Court holds that unless the findings of the Trial Court are "clearly erroneous" they are binding upon the Appellate Court. This case further defines "clearly erroneous" on page 20 of 348 U.S., on page 8 of 75 S.Ct., as follows:

"* * * A finding is clearly erroneous when ' "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746. * * *"

This is in line with Rule 46½, United States Admiralty Rules, U.S.Code Annotated, Title 28, and Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the latter reading in part as follows:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *"

The McAllister rule has been consistently adhered to by the Fifth Circuit in the following cases: Bisso v. Waterways Transp. Co., 235 F.2d 741; Mississippi Valley Barge Line Co. v. Indian Towing Co., 232 F.2d 750; The Mongioia, 232 F.2d 422; and C. J. Dick Towing Company v. The Leo, 202 F.2d 850.

The burden was therefore upon the Appellant to show that such findings were clearly erroneous and in this Appellant has failed. The decree dismissing the libel should be and it is affirmed.

Since we have concluded that the loss of cargo is excused under the 3rd Section of the Harter Act, it is unnecessary to consider whether the loss is also excused under the release clause of the charter contract.

Affirmed.