THE Tug R. A. TURRENTINE, Her Engines, etc. Brown & Root, Inc., Claimant, Appellant,

v.

AMERICAN HOME ASSURANCE COMPANY et al., Appellees.

No. 18016.

United States Court of Appeals
Fifth Circuit.

June 13, 1960.

Rehearing Denied July 15, 1960.

812

Robert Eikel, Houston, Tex., for appellant.

Robert T. Rylee, II, Edmond J. Ford, Jr., Corpus Christi, Tex., for appellees.

Before HUTCHESON, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

A cargo of drilling mud was lost while being transported on the Barge ITC 6 between Brownsville and Corpus Christi, Texas. The shipment was under a memorandum bill of lading issued by Magco Towing Company, here called Magco, showing Magnet Cove Barium Corporation, referred to hereafter as Magnet, as both shipper and consignee. The drilling mud was, it appears, owned by Magcobar, Inc., herein designated as Magcobar. Magnet was sales agent for Magcobar. Magco, Magnet, and Magcobar are affiliated companies. The barge was under bareboat charter from its owners to Magco. An arrangement had been made by Magco with Brown & Root, Inc. for the towing of the barge empty

from Corpus Christi to Brownsville, and of the barge loaded from Brownsville to Corpus Christi for agreed amounts which had varied from time to time. The loading and unloading were done by Magco. On the occasion of the incident giving rise to this litigation the Tug R. A. Turrentine, of Brown & Root, took the loaded barge at Brownsville and was pushing it up the Intracoastal Canal to Corpus Christi. After the tug and barge had reached Corpus Christi Bay one of the cables between the tug and the barge broke. The master of the tug then reversed the positions of the two vessels and placed the tug in front of the barge. While an attempt was being made to get the tug and tow under way, the barge listed and about two-thirds of the cargo went overboard and was lost.

Insurance on the cargo had been undertaken by American Home Assurance Company on behalf of Magnet and Magcobar. The insurance company paid Magnet and Magcobar on a loan receipt. The insurer, taking a position as subrogee of its insureds, brought suit by libel against the Tug R. A. Turrentine and Brown & Root, Inc., as its owner, seeking recovery for the value of the lost cargo and asserted both unseaworthiness and negligence. Brown & Root, by a petition under Admiralty Rule 56, 28 U.S. C.A. impleaded Magco and its two affiliates. Liability of the tug was denied and a claim was asserted against Magco and its affiliates for the agreed amount of the tug hire. The district court found that the tug was negligent in several respects and its negligence caused the listing of the barge and the loss of the cargo. The defenses, hereafter discussed, of the tug and its owner were rejected and its claim for tug hire was denied. A decree was entered for the recovery by the insurance company from the tug

and its owner, Brown & Root, Inc., of the value of the lost cargo. An appeal from that decree is before us.

■ The first of the three questions raised and argued on behalf of the tug is that Section 3 of the Harter Act[1] required a decree that the tug and its owner had no liability for the cargo loss. In support of this contention reliance is placed, primarily, upon the rule stated by the Supreme Court in Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 369, 71 L.Ed. 663. In that case the tow and the barge were held and operated by the owner of both, which undertook by its bill of lading to transport the goods of a shipper "on board of" the barge. This, the court held, was a transportation by the barge and the tug as the instrumentality for carrying out the undertaking for carriage, and the contract was one of affreightment rather than of towage. In the case before us there was no agreement that the tug or its owners would transport the cargo of the barge. Its obligation was to tow the barge from Corpus Christi to Brownsville empty and from Brownsville to Corpus Christi with a cargo. Such was the factual situation in Mississippi Valley Barge Line Co. v. T. L. James & Co., Inc., 5 Cir., 1957, 244 F.2d 263, certiorari denied 355 U.S. 871, 78 S.Ct. 121, 2 L.Ed.2d 76; motion for leave to file petition for rehearing denied 358 U.S. 901, 79 S.Ct. 218, 3 L.Ed.2d 152. In the opinion of this Court the Sacramento Navigation Co. case was discussed and its doctrine distinguished from the case, such as we have here, where the contract for the tug was for towage rather than affreightment. The full statement in the Mississippi Valley Barge Line case of the principle applicable here relieves us of the necessity of any further discussion of the question. See Robinson on Admiral-

1. "If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel * * *." 46 U.S. C.A. § 192.

ty 673 et seq.; Commerce Oil Corporation v. Dixie Carriers, 5 Cir., 1958, 252 F.2d 386.

■ The second point raised on behalf of the tug and its owner is that they should, by reason of bill of lading provisions, have been given the benefit of cargo insurance. The memorandum bill of lading which was issued by Magco to Magnet had a clause providing that:

"It is mutually agreed * * * that every service to be performed hereunder shall be subject to all the terms and conditions of the uniform domestic straight bill of lading set forth (1) in official Southern, Western and Illinois freight classifications in effect on the date hereof, if this is a rail or rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment."

Introduced in evidence and relied upon by the owner of the tug as evidencing an applicable contract is a copy of a domestic straight bill of lading as set forth in official Southern, Western and Illinois classifications. In this exhibit it is provided:

"Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance; Provided that the carrier shall reimburse the claimant for the premium paid thereon."

Since the transportation and towage which gave rise to this litigation was neither a shipment by rail, rail-water, nor motor carrier, it is difficult to see how the bill of lading called "official" could have been incorporated into the memorandum bill of lading when the stated condition of incorporation was not met. Even if it can be said that the memorandum incorporates the right of a carrier to benefit from insurance, it must also be said that the terms of the insurance contract have deprived the carrier of any such right. The insurance policy contains these provisions:

"Warranted free of any claim in respect of goods shipped under a Bill of Lading or contract of carriage stipulating that the carrier or other bailee shall have the benefit of any insurance on such goods, but this warranty shall apply only to claims for which the carrier or other bailee is liable under the Bill of Lading or contract of carriage.

"Notwithstanding the warranties contained in this clause it is agreed that in the event of loss of or damage to the goods by a peril or perils insured against by this policy for which the carrier or bailee denies or fails to meet his liability this Company shall advance to the assured as a loan without interest a sum equal to the amount they would have been liable to pay under this policy but for the above warranties the repayment thereof to be conditional upon and only to the extent of any recovery which the assured may receive from the carrier or bailee."

A warranty and bill of lading similar to those here before us, have been construed by the Texas Supreme Court in the case of Insurance Co. of North America v. Easton, 73 Tex. 167, 11 S.W. 180, 3 L.R.A. 424. There it was said:

"This * * * provision cuts off any construction of the policy whereby it could possibly be held to confer any right to benefit under it on a carrier of the property insured, and it deprives the insured of the power to confer on such carrier any right to benefit under the policy by contract or otherwise." 11 S.W. 180, 183.

The warranty, then, controls and the carrier can claim no benefit from the policy. See also 9 Am.Jur. 936, 937, Carriers § 827.

■■ There is another reason why the tug cannot be given the benefit of the cargo insurance, and it was upon this ground that the district court based its

conclusion. The tug was not, nor was its owner, a party to the memorandum bill of lading. It was not a carrier of the cargo for whose benefit insurance might inure. The point is urged that by renting its tug to the carrier named in the bill of lading, Brown & Root became a carrier. This is contrary to the rule of the Mississippi Valley Barge Line case. The contract of Brown & Root was for towage and not of affreightment, and this being so it could not, as a carrier, claim the benefit of insurance.

The third of the appellant's contentions is that it is entitled to recover from Magco the agreed price of $900 for its towage. It is admitted that the amount was agreed to be paid and that it has not been paid. The appellees content themselves with a reference to the district court opinion in Mississippi Valley Barge Line Co. v. T. L. James & Co., Inc., D.C.E.D.La.1956, 144 F.Supp. 662, where it was held that the finding that a carrier is responsible for the loss of cargo renders moot a claim for towage as the allowance of such claim would only increase the damage which the carrier would be called upon to pay. There are factual differences between this case and the Mississippi Valley case. Here there was an undertaking that the tug would move the barge empty from Corpus Christi to Brownsville as well as move the barge loaded from Brownsville to Corpus Christi. The first movement had been made. No such condition prevailed in the cited case. There the barge and the entire cargo were lost. Here the barge was delivered at its destination with a part of the cargo on board. The libelant alleged that there was a cargo loss in excess of $23,000. It stated its damage to be only $20,507.49 which it had paid to its policyholders. The court, in a pre-trial order, found that this amount was less than the monetary value of the cargo loss and expense of salvage. If the owner of the cargo or the charterer of the barge had damages for these items for which they were not compensated by insurance they failed to assert any claim for such damage. How the amount of the damage was computed does not appear. It appears that the amount of the recovery was for the loss of cargo and possibly also for salvage and other expense. It does not appear and we will not assume there was any reduction of the award by a towage allowance. If the insurer, as subrogee of the owner of the cargo, is to recover from the tug the full amount claimed by reason of its loss, it would seem that a denial to the tug of any amount for towage would result in the equivalent of a punitive damage award against the tug. See Foss Launch & Tug Co. v. The Kukui, D.C.N.D.Cal.1955, 130 F.Supp. 180; McCormick v. Jarrett, D.C.E.D.Mo. 1889, 37 F. 380. Such a result should not be enforced. The findings and conclusions of the district court do not mention the claim of the appellant for the hire of the tug. In the court's decree it is adjudged that Brown & Root take nothing on its cross-claims against Magco, Magcobar and Magnet, although there is no reference to the claim for tug hire. Whether the owner of the tug should be compensated for its hire and if so, how that compensation should be measured, should be determined by the district court. So that such a determination can be made the cause will be remanded. In all other respects the judgment of the district court will be affirmed.

Affirmed in part and reversed and remanded in part.

TUTTLE, Circuit Judge (concurring specially).

Having concurred in the opinion of this Court in the Mississippi Valley Barge Line Co. case, supra, but since on more thorough consideration of it in relation to the Supreme Court's decision in Sacramento Navigation Company, I have some considerable doubt as to the correctness of our decision, I think it appropriate to point out some respects in which this case differs from Mississippi Valley Barge Line.

Here, as there, the barge was furnished by the shipper and not by the carrier.

That is the distinguishing characteristic which we assigned for not following the Sacramento Navigation Company principle. Here, though, different from Mississippi Valley, there was no bill of lading issued by the owner of the tug for the carriage of the cargo. There was here only a contract for the hire of the tug to tow the barge, as is pointed out in the opinion of the Court. Furthermore, it is not contended here that Brown and Root were common carriers, a point which appellee says is critical in determining whether a Harter Act defense is available to it. The Mississippi Valley Barge Line Company was a common carrier by water, thus further distinguishing that case from this.

Finally, it appears in this case "that appellants pleaded that they had 'chartered' the tug; that the charter of the Tug 'R. A. Turrentine,' was one of engagement *only to tow* the barge of Magco Towing Co., Inc." (Emphasis added.) No such situation existed in Mississippi Valley.

I am, of course, bound by this Court's decision in the Mississippi Valley Barge Line case, more especially because I participated in it. If this were a similar case, however, I would announce my concurrence only because of the principle of stare decisis, since I now have some considerable doubt as to the validity of the distinction we there drew with Sacramento Navigation Co. As it is I am satisfied to point out the facts which I think distinguish this case from Mississippi Valley, and which clearly require the result announced by the Court.